ALEXANDER McGAVOCK v. OMAHA NATIONAL BANK.

FILED APRIL 17, 1902.    No. 11,189.

1. **Written Contract**: INTERPRETATION. In the interpretation of a written contract, when the meaning is doubtful, that construction will be preferred which gives effect to all parts of the instrument, rather than one which renders a portion of it redundant and useless.

2. **Surety**: AGREEMENT CONSTRUED. An agreement of a surety, in writing, dated May 19, 1893, that the creditor might extend time of payment on a note "pending the decision of the suit of George Canfield against Allen Rector, now in the supreme court of the state or for not over two years from this present date," *held* to authorize an extension during the pendency of *Canfield v. Rector* in this court, but no longer.

ERROR from the district court for Douglas county. Tried below before SLABAUGH, J. *Reversed.*

*Francis A. Brogan,* for plaintiff in error.

*Hall & McCulloch, contra.*

SULLIVAN, C. J.

The judgment under review was rendered by the district court for Douglas county in an action brought by the Omaha National Bank, as payee of a note signed by George Canfield as principal, and L. M. Rheem and Alexander McGavock as sureties. McGavock contends that the

judgment, which was in favor of the bank, is the result of a wrong construction of the following contract:

"Whereas, Alex. McGavock and L. M. Rheem are joint signers with George Canfield on one certain note payable to the Omaha National Bank, for three thousand dollars, dated Nov. 16, 1892, at six months, bearing interest at ten per cent. per annum from date, and on which interest has been paid to maturity, said note having arisen from various renewals of the note for same amount described in the agreement between said Canfield, McGavock and Rheem, bearing date Jan'y 29, 1890, securing said Mc-Gavock and Rheem against loss arising through signing said note: It is agreed by said McGavock and Rheem in order to avoid frequent signing of renewals, that said Canfield may from time to time pay interest in advance on said note of Nov. 16, 1892, for not over ninety-three days at one time, and have the same extended for such time, said McGavock and Rheem not to be released by such extension from their liability as it exists at this date.

"This agreement to hold good pending the decision of the suit of said George Canfield against Allen Rector, now in the supreme court of the state or for not over two years from this present date.                    L. M. RHEEM.

"Omaha, May 19, 1893.                    A. McGAVOCK."

This agreement, in connection with the conceded fact that Canfield had recovered a judgment against Rector in an action which had been removed to this court, and was then pending here, discloses fully the circumstances under which it was made; it exhibits the whole environment of the transaction upon which we are to pass judgment. The case of Canfield against Rector was decided by this court May 15, 1894. 40 Nebr., 595. The decision was in favor of Canfield, and the amount due upon the judgment was soon afterwards collected; paid over to the bank, and indorsed upon its note. Afterwards, on September 17, 1894, the bank, for an adequate consideration, agreed with Canfield that as to the remainder of the note the time of

payment should be extended for ninety-three days. Mc-Gavock now claims that this extension was not authorized by the agreement above set out, and that it operated to release him from his contract of suretyship. In our opinion, this view of the matter is correct. The liability of a surety is not to be extended by implication; he is not to be bound beyond the terms of his contract. *Brennan v. Clark,* 29 Nebr., 385; *Curtin v. Atkinson,* 36 Nebr., 110; *Godfrey v. City of Beatrice,* 51 Nebr., 272. The construction to be given the language of a written agreement must, however, be fair and just, not forced or strained to support a theory favorable to the surety. The spirit and intent of the instrument must be regarded rather than the forms of expression. In determining the meaning of the contract here in question, we must consider the two clauses providing for extensions in their relation to each other and to the subject-matter. We must take into account the situation of the parties, and the end and object they were seeking to accomplish. In other words we should, in expounding the contract, put ourselves, as near as may be, in the situation of the contracting parties at the time the contract was made. We should not, without reason, assume that the bank officer who wrote the agreement did not possess ordinary skill in composition, or that he did not understand the meaning of the language he employed. Clearly, the object of the parties in making the agreement was to enable Canfield to collect the amount due upon the judgment against Rector and apply it on the note in favor of the bank. The reason for the extensions being the pendency of the error proceeding, it was quite natural that the parties should stipulate that the authority for making extensions should come to an end when the reason for making them should cease to exist. The language used to express this thought was, it seems to us, entirely appropriate. It is plainly stated that the authority to make extensions was not to hold good, under all circumstances, for two years, but only during the pendency of the case in this court, "or for not over two years." The last clause is

a limitation upon the first; it marks the boundary of the bank's right to grant extensions without releasing the sureties; and that is its only function. To adopt the construction for which the bank contends would be to condemn the first clause and strike it from the contract as a useless iteration—a mischievous pleonasm, which can hardly be accounted for on the theory that there was wanting in the mind of the scrivener a distinct conception of the idea which he was seeking to express. If it were the mutual intention of the parties to allow extensions to be made during a period of two years at all events, and without any regard whatever to the time when the *Rector Case* should be decided, it is difficult to understand why a plain expression of that intention should be complicated with matters having no necessary relation to it. Bearing in mind the reason for making the contract extending the time of payment, we can not think it at all probable that the parties deliberately set down in writing an irrelevant recital and a redundant stipulation. It is to be presumed that the capable business man who wrote the contract had two ideas which he adequately expressed, rather than that he gave one idea two forms of expression at the expense of labor and perspicuity. Read in the light of subsequent events, the contract, according to the bank's interpretation of it, was an agreement for extension until May 15, 1894, or for two years from May 19, 1893. This would seem to be an absurd contract, but it would be no more absurd now than it was in the beginning. Nothing could come out of it that it did not originally contain.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.