WILLIAM G. MEYERS, APPELLANT, V.
FROHM HOLDINGS, INC., A CORPORATION, APPELLEE.

318 N.W.2d 716

Filed April 23, 1982. No. 43935.

Martin A. Cannon of Matthews & Cannon, P.C., for appellant.

Lyle E. Strom and David S. Houghton of Fitzgerald, Brown, Leahy, Strom, Schorr & Bartmettler, for appellee.

Heard before KRIVOSHA, C.J., BRODKEY, WHITE, and HASTINGS, JJ., and WINDRUM, D.J.

WINDRUM, D.J.

Plaintiff was employed by Union Packing Company, a Nebraska corporation, for many years. Frohm Holdings, Inc., is a successor company. The company was solely owned, or nearly so, by one Carl Frohm, its founder. Plaintiff performed many duties for the company, as directed by Carl Frohm. At

his behest, a separate corporation, named Diamond Investment Company, was created, with Carl Frohm and plaintiff as the incorporators. All its capital was loaned to it by Union Packing Company. Plaintiff, in his petition, alleges all the stock of Diamond was owned by Carl Frohm. Initially, the purpose of the corporation was to purchase and relocate houses and thereafter to rent and to sell same, and to feed cattle. Plaintiff claims he spent many hours in connection with the Diamond Investment Company but never received any income.

At the time of Carl Frohm's death, Diamond still had three houses left requiring the services of plaintiff. There were no negotiations for the sale of the plant of Union Packing Company. After Carl Frohm's death, plaintiff claimed that Carl Frohm, on behalf of Union Packing Company, had promised to someday pay him for the services he performed for Diamond, and further promised that plaintiff would receive $100,000 from Union when its plant was sold, if he was still an employee, to reimburse him for the delay in payment.

Prior to September 16, 1977, plaintiff, who was then president of Union, reported that there were very few assets in Diamond, and the liabilities of Diamond to Union were extensive. He suggested Diamond be liquidated, and he volunteered to assign all of the stock of Diamond issued in his name, which was 50 percent of the total, to Union, without consideration, for the purpose of liquidating Diamond. No action was taken.

On September 16, 1977, the board of Union accepted an offer to sell out. At that time, plaintiff informed the board of Union of his claim for $100,000 from the proceeds of the sale. The board not only denied the existence of such an agreement but, and the only issue presented here, alleged that the matter of all special deferred compensation had been fully settled and compromised by a certain written

agreement between the parties dated December 28, 1976.

Plaintiff further claims he was promised that when all the assets of Diamond were disposed of he would be then paid for the services he performed for Diamond. At the time he made the claim for $100,000 there were still three houses to be sold. Prior to suit they were sold. Plaintiff claims he is now entitled to be paid for such services and the $100,000. Union claims the matter of payment for services was likewise settled by the agreement of December 28, 1976, which said agreement constituted an accord and satisfaction.

Paragraph 9 of the agreement dated December 28, 1976, contained, among other things, the following sentence: "Meyers agrees, however, that his claim to any special deferred compensation is entirely resolved and satisfied by this agreement." In sustaining the motion for summary judgment of defendant, the trial court noted that there was no ambiguity, stating that the "dictionary definition of 'deferred' is 'put off; withheld for or until a stated time.' "

A recitation of a portion of the evidence adduced by way of a deposition and an affidavit of plaintiff and an affidavit of the attorney of Union concerning the agreement dated December 28, 1976, is appropriate.

While Carl Frohm was ill, and shortly before his death, plaintiff and Union executed a written document providing for disability benefits, death benefits, and retirement benefits to plaintiff. This was dated back to October 8, 1973. The agreement was executed on behalf of Union by Carl Frohm's brother, but was never submitted to the board of directors of Union for approval. Carl Frohm died July 18, 1976. At the directors' meeting of August 23, 1976, plaintiff presented his claim to the deferred compensation arrangement. The written agreement, so back-dated, did not mention any claim for services ren-

dered through Diamond, nor did it refer to $100,000 to be paid when the plant was sold. On December 28, 1976, and later approved by the board of directors of Union, plaintiff and Union entered into the "Deferred Compensation Agreement." The preambling clauses stated, among other things:

"WHEREAS, Meyers claims that he was promised special deferred compensation benefits, but Union disputes and denies Meyers' entitlement thereto; and

"WHEREAS, Meyers is indebted to Union in the sum of $175,000 . . .; and

"WHEREAS, the parties have agreed to compromise the aforementioned disputes as more particularly provided hereinafter."

Paragraph 9 of the agreement provides as follows: "The benefits provided for Meyers and/or his spouse and estate under this agreement are in addition to any other regular pension, retirement, disability or fringe benefits which Union provides for some or all of its eligible employees, and Meyers shall be entitled to all such other benefits for which he is eligible by reason of his employment by Union in addition to the benefits provided under this agreement. Meyers agrees, however, that his claim to any special deferred compensation is entirely resolved and satisfied by this agreement."

In *High-Plains Cooperative Assn. v. Stevens,* 204 Neb. 664, 284 N.W.2d 846 (1979), we stated that the essential elements in accord and satisfaction are: (1) A bona fide dispute between the parties; (2) Substitute performance tendered in full satisfaction of the claim; and (3) Acceptance of the tendered performance. Existence of these elements in this case is evident.

Surely no one would suggest that, if the parties so intend, an accord and satisfaction may not preclude recovery for any and all existing claims between the parties, whether in dispute or not. The key element

of accord and satisfaction is the intention of the parties, which, although as a general rule presents a question of fact, becomes a question of law when the evidence creates no conflict as to intention. *Black v. Denver United States National Bank,* 362 F.2d 38 (8th Cir. 1966), *cert. denied* 385 U.S. 990, 87 S. Ct. 596, 17 L. Ed. 2d 451.

The intention of the parties to a written contract expressed by clear and unambiguous language must be determined from its contents. Generally, oral testimony is not admissible to vary the terms of a written instrument of accord and satisfaction. 1 Am. Jur. 2d *Accord and Satisfaction* § 56 (1962).

"When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." Neb. Rev. Stat. § 25-1217 (Reissue 1979).

A written contract which is couched in clear and unambiguous language is not subject to a construction other and different from that which flows from the language used. *Bishop Cafeteria Co. v. Ford,* 177 Neb. 600, 129 N.W.2d 581 (1964).

A contract is not ambiguous within that sense merely because it may be difficult to construe. The construction of a contract, if needed, being a question of law for the court as well as a duty that rests upon the court, there can be no ambiguity within the rule to which we have referred unless and until an application of the pertinent rules of interpretation leaves it really uncertain which of two or more possible meanings represents the true intention of the parties. *Bishop Cafeteria Co. v. Ford, supra.*

Draftsmen, in preparing an agreement of accord and satisfaction, would surely attempt to draft the same so that all contingencies would be covered, and that belated claims or new demands, such as has actually happened in this case, would be excluded from future consideration.

In reading paragraph 9 of the deferred compensation agreement in its entirety, it is hard to imagine how a scrivener could draft a more unambiguous paragraph. The words "special deferred compensation" should be clear enough. However, "special deferred compensation" is further defined in that the benefits provided in said agreement, which was labeled as "Deferred Compensation Agreement," were in addition to other benefits, which benefits were defined as "regular pension, retirement, disability or fringe benefits which Union provides for some or all of its eligible employees." By failing to provide for further exceptions, it may be reasonably inferred that the parties intended there be none. If it was the intention of the parties that the agreement constituting the accord applied only to the dispute concerning the agreement of 1976, dated back to October 8, 1973, then there would have been no necessity to make an exception to other "regular" benefits due Meyers.

Lastly, Meyers waived not only the claim then in dispute but his claim to "any" special deferred compensation.

The claims now proffered by plaintiff do not fall within the exceptions, and no matter how one looks at them, they are claims for deferred payment, special in nature, especially as to defendant. Plaintiff alleged in his petition that the services were rendered for Diamond, which was owned by Carl Frohm, and yet, allegedly, Carl Frohm promised plaintiff all the payment would be by Union. If such would not constitute a claim for special deferred compensation, what would?

In determining that the deferred compensation agreement contained no ambiguities, and that Meyers is barred from collecting upon his claims by reason of the agreement of accord and satisfaction, there is no necessity to determine or to consider plaintiff's argument that the only dispute contem-

plated by any of the parties when the accord and satisfaction agreement was executed was the agreement of 1976, dated back to October 8, 1973. What was disputed is of no importance; what was the intent of the parties, as determined by the unambiguous agreement, is.

The decision of the district judge granting the defendant's motion for summary judgment is in all respects affirmed.

AFFIRMED.