VAL DEAN WATMORE, APPELLANT, V. WILLIAM FORD ET AL., APPELLEES.

425 N.W.2d 612

Filed July 8, 1988.   No. 86-454.

Carole McMahon-Boies, of Pepperl, Melcher & McMahon-Boies Law Offices, P.C., for appellant.

Robert M. Spire, Attorney General, Charles E. Lowe, and Steven D. Burns for appellees.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and CHEUVRONT, D.J., and COLWELL, D.J., Retired.

HASTINGS, C.J.

This is an appeal from the order of the district court which entered judgment in favor of the defendants, following defendants' motion for summary judgment. The trial court found that there were no genuine issues of material fact and that defendants were entitled to judgment as a matter of law. Plaintiff's petition was ordered dismissed. Plaintiff has appealed.

The defendants, William Ford, Arlyss Brown, and Linda Proskovec, were, respectively, the acting director of the Nebraska Department of Public Institutions (DPI), general counsel of DPI, and director of administrative services of DPI. Plaintiff had been an administrative employee of DPI whose immediate superior was defendant Proskovec.

Plaintiff's amended petition alleged that he had been employed by DPI between October 27, 1969, and December 9, 1982; that beginning in September of 1982, the defendants began an investigation of plaintiff's performance of the duties of his office, which culminated in charges being levied against plaintiff, resulting in his termination from employment on December 9, 1982; that the State Personnel Board, on October 27, 1983, found that plaintiff's termination had been improper and ordered his rehiring; that as a result of the period of termination, plaintiff had suffered damages in a variety of ways; that defendants' conduct amounted to deliberate, malicious, and intentional interference with plaintiff's contract of employment with the State of Nebraska; and that plaintiff had suffered damages in the nature of lost medical benefits, lost vacation time, lost pay raises, other expenses, and general damages consisting of physical and emotional distress, humiliation, and embarrassment.

In their separate, but similar, answers, the principal affirmative defense raised by defendants is that plaintiff, for a good and valuable consideration, had previously executed a release document releasing the State of Nebraska and its employees and agents from any and all liability arising out of the matters alleged in the amended petition and that plaintiff therefore is barred and precluded from pursuing his action against the defendants.

No reply of the plaintiff appears in the record.

In ruling favorably for the defendants, the district court found that plaintiff had in fact executed the release as alleged, which precluded him from pursuing this action.

The plaintiff assigns as error the granting of the summary judgment on the basis of a release for which he did not receive adequate compensation to justify the release of these defendants and, further, because it was clear from the circumstances surrounding the execution of the release, that plaintiff was receiving only backpay and therefore did not intend to release all causes of action against individuals acting outside the scope of their employment with the State of Nebraska.

The following facts are found in the record, concerning which there is no dispute. Plaintiff did, on February 7, 1984, file a miscellaneous claim with the State Claims Board, seeking recovery of $32,352.38 from the State of Nebraska for backpay and benefits alleged to be due for the period from December 24, 1982, through December 2, 1983, resulting from his improper termination. The claim was itemized to include health and medical benefits, life insurance benefits, and pay lost, including normal raises. A settlement was reached in the amount of $30,825.06. Plaintiff signed a release on May 3, 1984, in consideration of that amount, in which it is stated in part:

> I do hereby and forever fully release the State of Nebraska, its officers and employees, both individually and collectively from any and all claims which I may have against the State of Nebraska, or any of its officers or agents, by reason of the events and occurences [sic] of, on or about <u>Dec. 9 & 5</u>, <u>1982 & 83</u>, in <u>Lancaster</u> County, Nebraska, more fully described in my Claim for Injury or

Damage of the State of Nebraska, State Claims Board, Claim No. M.C. 085; that this release shall be binding upon myself, my heirs, executors, administrators and assigns and is complete as to any and all claims of every nature whatsoever, arising in connection with the events pertaining to said claim, and that it releases fully and finally damages and injuries both known and unknown.

Plaintiff was then paid by state warrant in the amount of $24,469.82, representing the consideration stated in the release less social security tax and state retirement.

The record further discloses undisputed facts as contained in the affidavits of the defendants. Essentially, defendant Brown recites that her office was assigned the responsibility of investigation of certain complaints that had been made against the plaintiff; that she or her office interviewed more than 32 witnesses; that the plaintiff chose not to respond to the information gathered in the investigation that was disclosed to him; and that all of the investigations, interviews, conversations, and recommendations made by Brown were done as a part of her duties and in her capacity as general counsel for DPI.

Defendant Proskovec's affidavit reveals that she did provide information relevant to the investigation; that upon being asked by the acting director of DPI for her recommendation, based on the information contained in the investigation, she did recommend termination of the plaintiff's employment; and that all of her actions were undertaken in her capacity as an employee of the state and as the plaintiff's supervisor.

William Ford, in his affidavit, stated that after a review of the investigation and two unsuccessful attempts to have the plaintiff respond to the allegations contained in the various statements in the investigation, and upon recommendation of Brown and his own review of the findings of the investigation, he did terminate plaintiff's employment with the state because it was his belief that the allegations made against plaintiff were significant to the degree that Watmore's continued employment would have a negative effect on the operations of the department. This action was taken in the course of the performance of Ford's duties as acting director of DPI.

The evidence submitted by the plaintiff at the hearing on the motion for summary judgment was concerned exclusively with his opinions as to whether the defendants had lied, should have known better, or terminated him out of malice. Additionally, he introduced portions of the testimony before the personnel board which later reinstated him.

At no point in the record has the plaintiff denied the execution of the release and the receipt of payment on that release, other than through his failure to file a reply to defendants' answers. In the absence of a reply, the allegations contained in an answer must be considered to be denied by the plaintiff. *Wood v. Tesch*, 222 Neb. 654, 386 N.W.2d 436 (1986). However, the release exists, the defendant signed it, and he received payment in full. There is no dispute in the record as to those facts. One who seeks to avoid the legal effect of a release of a cause of action for damages has the burden of pleading and proving the facts which entitle such party to relief. *Nicholson v. Braddock*, 201 Neb. 531, 270 N.W.2d 314 (1978). Plaintiff here did not do so.

In his reply brief, Watmore states:

> The release does not fail on the basis of inadequate compensation. However the coverage of the release must be determined to decide whether it was intended to extend . to employees acting outside the scope of their employment in taking actions against the plaintiff in the months of September, October, November and December of 1982.

Reply brief for Appellant at 3.

A release is a contract or a species of contract. "The general rules governing the construction of contracts are applicable in the construction of written releases; a release will be construed so as to effectuate the intention of the parties as gathered from the instrument taken as a whole." 76 C.J.S. *Release* § 38 at 669 (1952).

It is the law that the intent of the parties must be gathered from the contents of the document alone if the language used in the documents is unambiguous. *Washington Heights Co. v. Frazier*, 226 Neb. 127, 409 N.W.2d 612 (1987).

" 'When the terms of a contract and the facts and circumstances that aid in ascertaining the intent of the parties

are insufficient to raise an issue of fact, the interpretation of the contract is a matter of law.'. . ." *Dockendorf v. Orner*, 206 Neb. 456, 460, 293 N.W.2d 395, 397 (1980). Thus, the proper meaning of the release, if unambiguous, presents a question of law, with regard to which this court is obligated to reach an independent conclusion. *Washington Heights Co., supra.*

The release is broad, clear, and unambiguous; not special or restrictive. Watmore executed the release in full settlement of his claim, with the advice of counsel. The release was executed in connection with a claim, both of which were filed in the Office of Risk Management of the State of Nebraska. On its face, the release was intended to be a complete settlement and release of any dispute between an employee and his employer and its employees and agents with regard to his termination. The release did not reserve a claim against the defendants, but contained language indicative of an intention to release them, as it included "agents," "employees," and "officers" of the state. The release also discharged Watmore's rights "as to any and all claims of every nature whatsoever, arising in connection with the events pertaining to said claim," thus covering miscellaneous as well as tort claims. The termination date, December 9, 1982, was specifically set out. This matter cannot somehow be separated as independent from the matter of the present litigation, see *Mallette v. Taylor & Martin, Inc.*, 225 Neb. 385, 406 N.W.2d 107 (1987), as the defendants and their actions were precisely those contemplated in the release.

Watmore's case bears resemblance to a recent Missouri case, *Schmalz v. Hardy Salt Co.*, 739 S.W.2d 765 (Mo. App. 1987), where an employee signed a release which contained the following language discharging

"the Hardy Salt Company (Employer) its officers, directors, employees and agents, successors and assigns, of and from any and all manner of action and actions, causes and causes of action, debts, sums of money, obligations, liabilities, claims and demands whatsoever made, to be made, or which might have been made as a consequence of his employment by the Employer, or arising out of the termination of the employment relationship, or arising out of any acts committed or

omitted during or after the existence of the employment relationship . . . ." (Emphasis omitted.) *Id*. at 767. The plaintiff had consulted an attorney before signing the release. In consideration of the release, defendant Hardy Salt Company agreed to continue plaintiff on the payroll for at least another 6 weeks and to pay him 1 month's severance pay ($4,583.33) upon termination. The plaintiff was an experienced businessman and held the position of financial vice president of Hardy Salt. He sought to recover from his employer for, inter alia, tortious interference with his contract of employment. The court found all the counts in plaintiff's petition to be factually based upon conduct connected with plaintiff's employment or termination. With respect to the plaintiff's various causes of action, the court ruled:

> All arise under contract or tort at common law as a consequence of his employment or from termination of that employment or from acts committed or omitted during or after the existence of that employment relationship. All such claims have been released. There is no material fact in dispute and defendants were entitled to judgment as a matter of law.

*Id*. at 768.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from material facts and that the moving party is entitled to judgment as a matter of law. *Schriner v. Meginnis Ford Co.*, 228 Neb. 85, 421 N.W.2d 755 (1988); *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 416 N.W.2d 216 (1987).

The judgment of the district court is affirmed.

AFFIRMED.