MEMORANDUM OPINION AND ORDER
 

 CAMBRIDGE, Chief Judge.
 

 This matter is before the Court on the Magistrate Judge’s report and recommendation (filing 44) and the plaintiffs objections to that report and recommendation filed as allowed by 28 U.S.C. § 636(b)(1) and NELR 72.4. (filing 45). In the report and recommendation, Magistrate Judge Piester recommends that the Court grant the defendants’ motion for summary judgment (filing 30).
 

 In her amended complaint (filing 29), the plaintiff alleged four causes of action: (1) violation of the plaintiffs Due Process rights; (2) violation of the plaintiffs First Amendment rights; (3) violation of 20 U.S.C. § 1681; and (4) breach of contract.
 
 [1]
 
 In the report and recommendation, Magistrate Judge Piester concluded that the defendants were entitled to summary judgment on the plaintiffs first, second, and third causes of action because the plaintiff had executed a valid and binding release of those causes of action. Furthermore, Magistrate Judge Piester concluded that the Court should decline to exercise supplemental jurisdiction over the plaintiff’s fourth cause of action because, by dismissing the first three causes of action, the Court would be dismissing all claims over which the Court had original jurisdiction. See, 28 U.S.C. § 1367(c)(3) (“The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...”).
 

 The Court has conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the portions of the report and recommendation to which objections have been made and finds as follows:
 

 1. the defendants are entitled to summary judgment on the plaintiffs first, second, and third causes of action because (a) the plaintiff executed a valid release of those causes of action and (b) any breach by the defendants of that release or the contract within which that release was contained was not so substantial or fundamental as to defeat the objectives of the plaintiff and the defendants in entering into that release or that contract. See,
 
 Eliker v. Chief Industries, Inc.,
 
 243 Neb. 275, 498 N.W.2d 564, 570 (1993) (stating that “rescission is the proper remedy where a breach of contract is so substantial and fundamental as to defeat the object of the parties in making the agreement”).
 

 2. the Court will decline to exercise supplemental jurisdiction over the plaintiffs fourth cause of action because all claims over which the Court has original jurisdiction must be dismissed;
 

 
 *1422
 
 3. the Magistrate Judge’s report and recommendation should be adopted;
 

 4. the plaintiffs objections to that report and recommendation should be overruled;
 

 5. the defendants’ motion for summary judgment should be granted; and
 

 6. this action should be dismissed with prejudice. Therefore, it is ordered that
 

 1. the Magistrate Judge’s report and recommendation (filing 44) is adopted;
 

 2. the plaintiffs objections to the Magistrate Judge’s report and recommendation (contained in filing 45) are overruled;
 

 3. the defendants’ motion for summary judgment (filing 30) is granted; and
 

 4. this action is dismissed with prejudice.
 

 JUDGEMENT
 

 In accordance with the memorandum opinion and order entered herein on this date, it is ordered that this action is dismissed with prejudice.
 

 REPORT AND RECOMMENDATION
 

 PIESTER, United States Magistrate Judge.
 

 Pending before the court is defendants’ motion for summary judgment. (Filing 30.)
 
 [1]
 
 For reasons discussed more fully below, I shall recommend that the motion be granted.
 

 BACKGROUND
 

 In July 1992 the Board of Education (“Board”) for defendant Butte School District # 5 (“District”) hired plaintiff Lela K. Watts (“plaintiff’) as the district superintendent pursuant to a two-year employment contract. (Filing 29, Amended Complaint, at ¶ 11; Filing 12, Mellor Affidavit, at ¶3.) Shortly thereafter, the U.S. Department of Education Office of Civil Rights asked plaintiff to provide information concerning an “on-going Title IX complaint” filed against the District. (Amended Complaint, at ¶ 12.) Plaintiff alleges that she relayed the request for information to the Board, which consisted of defendants Mellor, Atkinson, Reiman, Moore, Reiser, and Liewer.
 
 (Id.
 
 at ¶ 13.) She alleges that the Board “withheld information” concerning the Title IX complaint and “instructed her to not participate in the investigation.”
 
 (Id.
 
 at ¶ 14.) Plaintiff also alleges that, after notifying the Board of the Title IX investigation, she began receiving “harassing phone calls and death threats.”
 
 (Id.
 
 at ¶ 15.) She notified the news media, which published accounts of the calls and threats.
 
 (Id.
 
 at ¶¶ 16-17.) Plaintiff alleges that shortly thereafter, the Board “met in secret session” and terminated her from her position.
 
 (Id.
 
 at ¶ 17.) She alleges that the Board subsequently met in public session, reinstated her to her position, and began negotiations for termination of her employment contract.
 
 (Id.
 
 at ¶ 18.)
 

 On March 30, 1993 plaintiff and the defendants executed an “Agreement for Settlement and Release of All Claims” (“the agreement”). (Amended Complaint, at ¶ 19; Mellor Affidavit, Exhibit A.) The agreement had been jointly drafted by plaintiff’s counsel, Beverly Grenier, and counsel for the District,’ John Recknor. (Filing 12, Recknor affidavit, at ¶¶ 5-6.) Pursuant to the agreement, the defendants paid plaintiff $7,629 in cash in exchange for plaintiffs resignation from her position as superintendent. (Mellor Affidavit, Exhibit A, at ¶¶ 1-2.) Additionally, the agreement provided:
 

 Subject to the terms and conditions set forth herein, the parties to this Agreement hereby mutually release, acquit and forever discharge each other, their heirs, executors, administrators and assigns, of and from any and all actions, causes of action, claims, demands, grievances, petitions, damages, costs, expenses and compensation or any other type of action, however framed, whether filed in a court of competent jurisdiction, tribunal of competent jurisdiction, a commission, bureau, or any body of whatsoever nature or however styled, on account of, or in any way resulting from the employment relationship or
 
 *1423
 
 any other dealings between the parties hereto which existed or may have existed as of the date of execution of this Agreement for settlement and release of all claims. This release specifically includes the agreement of the members of the Board of Education, either officially or individually, not to file, or participate in, except as required by law, any complaint against Lela Watts, or act in any other manner against Lela Watts before the Professional Practices Commission or other administrative body with the Nebraska Department of Education.
 

 (Id.
 
 at ¶ 8.)
 

 In May 1993 defendants Mellor and Liewer were contacted by a Brian Halstead, counsel for the state Professional Practices Commission (“PPC”),
 
 [2]
 
 regarding an ongoing investigation into several complaints previously filed against plaintiff by certain third parties. (Filing 14, Halstead Affidavit, at ¶¶ 3-7.) Halstead asked Mellor and Liewer for information concerning incidents identified in those complaints.
 
 (Id.
 
 at ¶¶8-9.) Mellor then contacted John Recknor and inquired as to whether the agreement with plaintiff precluded him from answering Hal-stead’s questions. (Mellor Affidavit, at ¶ 13.) Recknor advised Mellor that such conduct was not prohibited under the agreement because it would not involve the filing of a new complaint and because Halstead could simply issue a subpoena if Mellor refused to cooperate.
 
 (Id.
 
 at ¶ 14.) Thereafter, Mellor contacted Halstead and agreed to answer his questions.
 
 (Id.
 
 at ¶ 15.) Defendant Liewer also voluntarily cooperated with the PPC investigation. (Halstead Affidavit, at ¶ 10.)
 

 Plaintiff brings this action pursuant to 42 U.S.C. § 1983 asserting that the defendants violated her rights under the Due Process Clause, the First Amendment, and 20 U.S.C. § 1681
 
 et seq.
 
 (Amended Complaint, at ¶¶ 26-35.) Also, pursuant to this court’s supplemental jurisdiction,
 
 see
 
 28 U.S.C. § 1367, plaintiff asserts state law claims arising from the execution and alleged breach of the agreement between the parties.
 
 (Id.
 
 at ¶¶ 36-40.)
 

 DISCUSSION
 

 Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” The purpose of a motion for summary judgment is to determine whether a “genuine issue of material fact” exists.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). A “material fact” is a fact “that might affect the outcome of the suit under the governing law.”
 
 Id.
 
 at 248, 106 S.Ct. at 2510. A “genuine issue” regarding a material fact exists “if the evidence is such that a reasonable jury could return a verdict for a nonmoving party.”
 
 Id.
 

 Summary judgment is properly granted when, viewing the facts and reasonable inferences in the light most favorable to the non-moving party, it is clear no genuine issue of material fact remains and the case may be decided as a matter of law.
 
 Greeno v. Little Blue Valley Sewer Dist.,
 
 995 F.2d 861, 863 (8th Cir.1993). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial:
 

 [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s ease, and on which that party will bear the burden of proof at trial. In such a situation, there can be “no genuine issue as to any material fact,” since a complete failure of proof concerning an essential element of the non-moving party’s case necessarily renders all other facts immate
 
 *1424
 
 rial. The moving party is “entitled to judgment as a matter of law” because the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.
 

 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 

 In their motion for summary judgment defendants contend that plaintiff “on or about March 30,1993, for good and sufficient consideration, resigned her position and released all claims alleged in [her] Amended Complaint, and that this release is valid and binding upon her.” (Filing 30, at 2.)
 

 Release is an affirmative defense which will be considered by the court only if properly pleaded.
 
 National Compressor Corp. v. Carrow,
 
 417 F.2d 97, 102 (8th Cir. 1969);
 
 Fed.R.Civ.P.
 
 8(c). Defendants, by citing the existence of the release agreement in their motion for summary judgment, have properly raised it as an affirmative defense. 2A Moore,
 
 Federal Practice
 
 § 12.09[3] at 12-115 n. 15 (2d ed. 1995) (collecting cases standing for proposition that affirmative defenses may be raised in a motion under Rule 12(b)(6) treated as a motion for summary judgment). Plaintiff does not dispute the existence of the agreement nor does she contend that the federal claims raised in her amended complaint would not be covered by the agreement’s prohibition against “any and all actions, causes of action, claims, demands, grievances, petitions, damages, costs, expenses and compensation or any other type of action.” Thus, unless plaintiff can establish that the agreement should not be enforced according to its terms,
 
 [3]
 
 defendants will be entitled to summary judgment.
 
 [4]
 

 Gustafson v. Gustafson,
 
 239 Neb. 448, 453, 476 N.W.2d 819 (1991) (party seeking to avoid legal effect of release bears burden of pleading and proving facts which entitle that party to relief);
 
 McCamley v. Moss,
 
 587 F.2d 391, 395 (8th Cir.1978) (under Nebraska law party seeking to set aside release bears burden of proof).
 

 Plaintiff first alleges that the agreement is voidable because the individual defendants bargained with her “knowing that they would voluntarily participate in disciplinary proceedings pending with the PPC.” (Amended Complaint, at ¶37.) She alleges that the defendants’ failure to disclose the existence of the PPC complaints pending against her amounted to an “intentional misrepresentation[ ].”
 
 (Id.
 
 at ¶ 38; Plaintiffs Brief, at 4.) Plaintiff thus asserts that the release agreement is voidable because it was procured by fraud in the inducement. (Plaintiffs Brief, at 4-5.)
 

 “A party who has been induced to enter a contract by fraud ... may ... disaffirm it and be reinstated to the position he was in before it was consummated”.
 
 Gitschel v. Sauer,
 
 212 Neb. 454, 456, 323 N.W.2d 93 (1982). Under Nebraska law, the elements of the fraud-in-the-inducement defense are:
 

 (1) that a representation was made; (2) that the representation was false; (3) that the representation was known to be false when made, or was made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely on it; (5) that the plaintiff reasonably did so rely; and (6) that the plaintiff suffered damage as a result.
 

 
 *1425
 

 Pawnee County Bank v. Droge,
 
 226 Neb. 814, 322-23, 411 N.W.2d 324 (1987);
 
 see
 
 Nebraska Jury Instructions, Civil § 15.21 (referring to above-cited defense as “fraud in the inducement”). The party raising fraud in the inducement as a defense bears the burden of proof.
 
 Erftmier v. Eickhoff,
 
 210 Neb. 726, 731-32, 316 N.W.2d 754 (1982),
 
 overruled on other grounds, Nielsen v. Adams,
 
 223 Neb. 262, 388 N.W.2d 840 (1986). Thus, the burden is on plaintiff in this case to establish each element of that defense.
 

 The first two elements of the fraud-in-the-inducement defense, read together, require a showing that a false representation was made. Plaintiff asserts that a false representation occurred when defendants failed to disclose the existence of complaints which were pending with the PPC at the time the agreement between the parties was executed.
 

 Failure to disclose information may constitute a fraudulent representation. Restatement (Second) of Contracts § 160 (1981);
 
 cf. State ex rel. NSBA v. Douglas,
 
 227 Neb. 1, 24, 416 N.W.2d 515 (1987) (“fraud may ... consist of the omission or concealment of a material fact”),
 
 cert. denied,
 
 488 U.S. 802, 109 S.Ct. 31, 102 L.Ed.2d 10 (1988). However, before a failure to disclose can amount to a fraudulent representation, it must be established that the undisclosed fact was known to the party accused of failing to disclose it. Restatement (Second) of Contracts,
 
 supra.
 

 Plaintiff has submitted no evidence from which it can be inferred that the defendants knew of any complaints pending against her at the time the agreement was executed. Nor has she submitted any evidence suggesting that defendants should have known of the existence of any such complaints. She merely asserts by affidavit that, at the time she executed the release agreement, “she was not aware of any pending claims for investigations in regard to [her] actions as Superintendent of Schools for Defendants.” (Plaintiff’s Brief, Watts Affidavit, at ¶ 4.) The only other evidence submitted on this issue indicates that the defendants were informed of the complaints when the PPC attorney contacted defendants Mellor and Liewer — several months after execution of the agreement. (Mellor Affidavit, at ¶ 12; Recknor Affidavit, at ¶ 8.)
 

 Thus, plaintiff has failed to make an evidentiary showing sufficient to establish that a fraudulent representation was made by the defendants. Such a showing is essential to her fraud-in-the-inducement defense, a matter on which she would bear the burden of proof at trial. “In such a situation, there can be ‘no genuine issue as to any material fact,’ since a complete failure of proof concerning an essential element of the nonmoving party’s ease necessarily renders all other facts immaterial.”
 
 Celotex Corp.,
 
 477 U.S. at 322-23, 106 S.Ct. at 2552. Further, “[t]he moving party is ‘entitled to a judgment as a matter of law5 because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.”
 
 Id.
 
 at 323, 106 S.Ct. at 2552. Therefore, the defendants are entitled to summary judgment on the issue of whether there was fraud in the inducement and that defense cannot be relied on to void the agreement.
 

 Plaintiff also argues that there was “fraud in the factum.” (Plaintiffs Brief, at 3-4.) Fraud in the factum occurs where a party makes a representation that “is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect.” E. Farnsworth,
 
 Contracts
 
 § 4.10 (2d ed. 1990);
 
 see S.I.D. No. 32 v. Continental Western Corp.,
 
 215 Neb. 843, 860-61, 343 N.W.2d 314 (1983), citing
 
 Shenandoah Nat. Bank v. Gravatte,
 
 4 Neb. (Unoff.) 591 (1903) (fraud in the factum has been found where an illiterate was made to believe that instrument he signed was of some other character).
 

 Plaintiff in this case has presented no evidence indicating that she did not understand the nature of the agreement she was signing. Moreover, she was represented by an attorney who participated in the drafting of the agreement.
 
 See Grant County Sav. & Loan v. Resolution Trust Corp.,
 
 968 F.2d 722 (8th Cir.1992) (“[w]hen the parties have negotiated the release with the assistance of counsel, and both sides agreed to the
 
 *1426
 
 language included in the release, we will assume the parties are fully aware of the terms and scope of their agreement”). Thus, there is no basis for a fraud-in-the-factum defense and the defendants are entitled to summary judgment on that issue as well.
 

 Plaintiff next contends that the agreement should be avoided because the defendants breaehed the agreement by participating in the PPC investigation of the complaints filed against her. In essence, plaintiff seeks rescission of the contract based on the alleged breach. The effect of rescission is to return the parties to the status quo so far as circumstances permit.
 
 Kracl v. Loseke,
 
 236 Neb. 290, 461 N.W.2d 67 (1990). Thus, rescission would return to plaintiff the claims she released via the agreement. However, rescission is a proper remedy only where a breach of contract has occurred which is so substantial and fundamental as to defeat the objectives of the parties to the agreement.
 
 Eliker v. Chief Industries, Inc.,
 
 243 Neb. 275, 498 N.W.2d 564 (1993);
 
 Olson v. Pedersen,
 
 194 Neb. 159, 231 N.W.2d 310 (1975).
 

 Plaintiff argues that the defendants, by voluntarily cooperating with the PPC investigation into the complaints pending against her, breached their promise “not to ... participate in, except as required by law, any complaint against” plaintiff. (Plaintiffs Brief, at 5-7.) Defendants counter that the foregoing language merely prohibited defendants from “participating in
 
 the making
 
 of any
 
 new
 
 complaint against” plaintiff and that, as such, their cooperation in the investigation of complaints which were filed by third parties prior to execution of the agreement does not violate the terms of the agreement. (Defendants’ Brief, at 13.)
 

 A release is to be construed as any other contract.
 
 Watmore v. Ford,
 
 229 Neb. 121, 125, 425 N.W.2d 612 (1988),
 
 overruled on other grounds, Landon v. Pettijohn,
 
 231 Neb. 837, 438 N.W.2d 757 (1989). As a general rule, the proper construction of a contract is a question of law.
 
 Newman v. Hinky Dinky Omaha-Lincoln, Inc.,
 
 229 Neb. 382, 386, 427 N.W.2d 50 (1988);
 
 Polenz v. Farm Bureau Ins. Co.,
 
 227 Neb. 703, 707, 419 N.W.2d 677 (1988). The determination of whether a contract is ambiguous is likewise a question of law to be decided by the court.
 
 Smith v. Wrehe,
 
 199 Neb. 753, 261 N.W.2d 620 (1978). “[T]he fact that the parties urge opposing interpretations does not necessarily indicate a document is ambiguous.”
 
 Fisbeck v. Scherbarth, Inc.,
 
 229 Neb. 453, 467, 428 N.W.2d 141 (1988). Rather, an ambiguity exists only where application of the pertinent rules of construction “leaves it really uncertain which of two or more possible meanings represents the true intention of the parties.”
 
 Meyers v. Frohm Holdings, Inc.,
 
 211 Neb. 329, 318 N.W.2d 716 (1982). An elementary rule of construction is that “words must be given their plain and ordinary meaning as reasonable persons would understand them.”
 
 Kreikemeier v. McIntosh,
 
 223 Neb. 551, 555, 391 N.W.2d 563 (1986). However, a “[rjelease must be construed so as to effectuate intention of parties as gathered from the instrument as a whole.”
 
 Watmore, swpra.
 

 The first matter to be resolved is whether the PPC complaints pending against plaintiff constituted “eomplaint[s]” within the meaning of paragraph 8 of the agreement. It is important to note that the term “complaint” in that paragraph is modified by the word “any.” There are no additional modifiers such as “hereafter filed,” “new,” or “future.” Thus, giving the words “any complaint” their plain and ordinary meaning, it is evident that
 
 every
 
 complaint,
 
 whenever filed,
 
 was to be covered by the agreement. The PPC complaints at issue here, even if filed prior to execution of the agreement, therefore would constitute “eomplaint[s]” under the agreement.
 

 The next question to be considered is the meaning of the agreement’s prohibition against “participat[ion]” in any complaint. The plain meaning of the word “participate” is “to take part.” American Heritage Desk Dictionary at 691 (1981). Plaintiff contends that the defendants took part in the pending PPC complaints by substantiating the allegations contained in those complaints. She argues that
 

 [u]nless there is some action taken upon the complaint, some investigation for ex
 
 *1427
 
 ample, then it is virtually impotent. It is the substantiation of the complaint through a process of investigation that gives a complaint effect.
 

 (Plaintiffs Brief, at 7.) Conversely, defendants maintain that once a complaint is initially made or filed, one can no longer “participate” in that complaint. (Defendant’s Brief, at 17-18.)
 

 An examination of the statute governing PPC complaints at the time the agreement was executed, tends to support plaintiffs proposed interpretation. Under the process set forth in
 
 Neb.Rev.Stat.
 
 § 79-1283 (Reissue 1992), complaints were to be filed with, or brought to the attention of, the Commissioner of Education.
 
 Id.
 
 If a complaint raised legally sufficient grounds for imposition of any of the penalties provided for by statute, the Commissioner was required to cause that complaint to be investigated.
 
 Id.
 
 The investigation requirement was stated in mandatory terms. Thus, the complaint itself brought no adverse consequences to the party named therein unless and until the commissioner had ordered an investigation and presumably obtained sufficient substantiation for the allegations in the complaint. As such, under the statute, one who substantiated the allegations of a complaint participated or took part in giving that complaint effect.
 
 [5]
 
 Because section 79-1283 was in existence at the time the agreement was executed, it became a part of that agreement.
 
 In re Estate of Peterson,
 
 221 Neb. 792, 800, 381 N.W.2d 109 (1986). Therefore, under the plain and ordinary meaning of the word “participate” as used in the agreement, the defendants were prohibited from substantiating the allegations contained in any PPC complaints, unless required to do so by law.
 

 Further support for this construction of “participate” can be gleaned from the preceding phrase in the agreement, in which the defendants promised “not to file ... any complaint.” If the word “participate” were construed to mean take part in the filing of a complaint, it would be superfluous and redundant, as such conduct would seemingly fall within the agreement’s prohibition against filing a complaint.
 
 McGavock v. Omaha National Bank,
 
 64 Neb. 440, 90 N.W. 230 (1902) (construction that gives effect to all parts of a contract is preferred over one that renders part of the contract redundant and useless).
 

 Moreover, the language of the agreement as a whole demonstrates that the intent of the parties was to prevent the defendants from having any involvement whatsoever in complaints or proceedings against plaintiff before the PPC. The opening paragraph indicates the parties which were to be bound by the agreement: plaintiff, the District, the Board, and the individual members of the Board — defendants Mellor, Atkinson, Reiman, Moore, Reiser, and Liewer. Following a recitation of various terms of the agreement, a broad, comprehensive- release of liability covering all parties to the agreement is set forth in the first sentence of paragraph 8. The second sentence of paragraph 8, discussed above, emphasizes that the broad release of liability in the preceding sentence includes “the agreement of the members of the Board of Education, either officially or individually, not to file, or participate in, except as required by law, any complaint against Lela Watts, or act in any other manner against Lela Watts before the Professional Practices Commission or other administrative body with the Nebraska Department of Education.”
 
 [6]
 
 This
 
 *1428
 
 special emphasis placed on PPC and other administrative bodies indicates that the potential involvement of the defendants in complaints or proceedings before those bodies was a major area of concern for plaintiff. The language limiting that involvement includes three prohibitions, each seemingly broader in scope than the last. Specifically, the defendants were not to “file ... complaints,” “participate in ... eomplaint[s],” or “act in any other manner against [plaintiff] before the [PPC].” Thus, the intention of the parties “as gathered from the instrument as a whole” was that the defendants were to avoid involvement of any kind in complaints or other proceedings against plaintiff before the PPC.
 

 Finally, paragraph 5 of the agreement provides that “[t]he District reserves the right to truthfully respond to inquiries regarding the manner in which the severance of the employment of Lela Watts occurred with the District for unemployment compensation purposes.” Had the parties intended to reserve the right in the defendants to respond truthfully to inquiries regarding pending PPC complaints, paragraph 5 suggests that they would have done so explicitly.
 

 Based on the foregoing, I conclude, as a matter of law, that the agreement prohibited the defendants from voluntarily cooperating in the investigation of any complaints against plaintiff before the PPC.
 

 Defendants contend that a contractual provision prohibiting voluntary cooperation with a PPC investigation is unenforceable because it is “contrary to public policy and illegal.” (Defendant’s Brief, at 20.) “The relevant principle is well-established: a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.”
 
 Town of Newton v. Rumery,
 
 480 U.S. 386, 392, 107 S.Ct. 1187, 1191, 94 L.Ed.2d 405 (1987). The interest in enforcing the defendants’ promise in this case is the encouragement of private settlement of disputes. The public policy concern implicated is the interest of the PPC in obtaining accurate information necessary for maintaining a high level of professionalism in the educational system.
 
 See Neb.Rev.Stat.
 
 § 79-1282 (Reissue 1994).
 

 I conclude that the private interest in enforcing the defendants’ promise outweighs the public policy concern. My conclusion is based on the fact that the defendants’ promise not to participate in PPC complaints against plaintiff was qualified to permit such participation where “required by law.” At the time the agreement was executed the PPC had the power by state statute to require such participation by subpoenaing witnesses.
 
 Neb.Rev.Stat.
 
 § 79-1285 (Reissue 1992). The defendants’ promise not to participate in PPC complaints thus would not prevent the PPC from vindicating its interest in obtaining information. It could do so by simply issuing a subpoena. As such, the defendants’ promise not to participate in PPC complaints is not void against public policy, but rather is enforceable.
 
 See Hoffman v. United Telecommunications, Inc.,
 
 687 F.Supp. 1512 (D.Kan.1988) (agreement whereby plaintiff promised to voluntarily cease cooperation with government investigation into discrimination charge held not to violate public policy where plaintiff would still be available to testify if subpoenaed by the government). As it is undisputed that defendants Mellor and Liewer voluntarily agreed to answer questions in connection with PPC complaints filed against plaintiff, there was a breach of the agreement.
 

 However, as noted above, rescission of a contract so as to return the released claims to plaintiff, is available only if the breach was “substantial.” The question of whether a breach was “substantial” or “material” is ordinarily a question of fact. E. Farnsworth,
 
 Contracts
 
 § 8.16 (2d ed. 1990); J. Calamari
 
 & J.
 
 Perillo,
 
 The Law of Contracts
 
 409 (1977); 6 Williston
 
 A Treatise on the Law of Contracts
 
 § 841, at 159 (3d ed. 1962); Restatement (Second) of Contracts § 237 (1981). However, where the facts giv
 
 *1429
 
 ing rise to the breach are undisputed, the court may decide the issue as a matter of law. 17A Am.Jur.2d,
 
 Contracts,
 
 § 608 (1991);
 
 see Gibson v. City of Cranston,
 
 37 F.3d 731 (1st Cir.1994) (applying Rhode Island law);
 
 Milner Hotels, Inc. v. Norfolk & Western Ry. Co.,
 
 822 F.Supp. 341, 345 (S.D.W.Va.1993) (applying West Virginia law),
 
 affd
 
 19 F.3d 1429 (4th Cir.1994);
 
 McKeon v. Williams,
 
 104 Or.App. 106, 799 P.2d 198 (1990);
 
 affd,
 
 312 Or. 322, 822 P.2d 699 (1991).
 

 In this case, the facts giving rise to the breach are undisputed. Defendants concede that they voluntarily agreed to cooperate with the PPC attorney investigating complaints filed against plaintiff. (Mellor Affidavit, at ¶ 15; Halstead Affidavit, at ¶ 10.) Thus, it is for the court to decide whether the breach was substantial.
 

 In considering whether a breach was substantial or material, various factors should be considered.
 
 See
 
 Restatement (Second) of Contracts § 241 (1981). Chief among them are the extent to which the injured party’s objectives were defeated and the extent to which that party was deprived of the benefit reasonably expected to receive.
 
 Id.; Eliker, supra.
 
 In this case, one of plaintiffs objectives was to prevent the defendants from divulging information that could be used against her. The benefit she expected to receive was avoidance of any adverse actions against her based on the information possessed by the defendants. Plaintiffs objectives and expectations were limited, however, by the parties’ recognition in the agreement that the defendants could divulge the pertinent information if required by law to do so. While the defendants in this case were not required by law to provide the information to the PPC, that information could have been acquired by the PPC even if defendants had refused to cooperate, by the simple issuance of a subpoena. Because of that fact, I conclude that the defendants’ voluntary provision of information, while clearly a breach of the agreement, was not so substantial and fundamental as to defeat the objectives and reasonable expectations of the plaintiff.
 
 Eliker, supra.
 
 As rescission is not a proper remedy in this case, plaintiff is not entitled to a return of her released claims on that basis.
 

 Plaintiffs final argument to avoid the effect of the agreement is that the defendants’ participation in the PPC investigation constituted a failure of the consideration supporting the agreement. The Nebraska Supreme Court has held that ‘“[w]here a release has to be supported by a consideration, total failure of the consideration will enable the releasor to avoid the release.’ ”
 
 Humber v. Gibreal Auto Sales, Inc.,
 
 207 Neb. 286, 288, 298 N.W.2d 363 (1980) (quoting 66 Am. Jur.2d
 
 Release
 
 § 13 (1973)). In
 
 Humber,
 
 the plaintiff signed a release agreement in exchange for five dollars and a promise by the defendant to transfer to plaintiff the title to a 1973 Thunderbird. The defendant never transferred title to the vehicle. The Nebraska Supreme Court determined that this failure constituted a total failure of consideration which thus “barred enforcement of the release agreement.”
 
 Id.
 
 In so doing the court noted that a total failure of consideration is one “of such a degree that the remaining consideration may be deemed to be no substantial consideration” such that the complaining party “derive[s] no benefit from the contract.”
 
 Id.
 
 at 289, 298 N.W.2d 363 (citing
 
 Cotner College v. Estate of Hester,
 
 155 Neb. 279, 51 N.W.2d 612 (1952)).
 

 In this ease, it is clear that part of the consideration for plaintiffs release of claims was the defendants’ promise “not to file, or participate in, except as required by law, any complaint against Lela Watts, or act in any other manner against Lela Watts before the Professional Practices Commission or other administrative body with the Nebraska Department of Education.” As noted above, the defendants breached that promise by participating in the PPC investigation of the complaints against plaintiff. Thus, there was a failure of consideration. However, under the terms of the contract plaintiff was also to receive $7,629 as consideration. Evidence' submitted by the defendants indicates that plaintiff received that money. (Mellor Affidavit, Exhibit E.) Plaintiff has presented no evidence to the contrary. Thus, while the defendants’ participation in the investigation constituted a failure of consideration, that
 
 *1430
 
 failure cannot be said to be “total” since plaintiff has clearly derived a benefit from the agreement.
 
 Humber, supra.
 
 Because there has been no total failure of consideration, the agreement may not be avoided on that ground.
 
 See id.; see also White v. General Motors Corp., Inc.,
 
 699 F.Supp. 1485, 1488 (D.Kan.1988) (applying Kansas law and concluding that partial failure of consideration is not sufficient to bar enforcement of a release agreement),
 
 ajfd,
 
 908 F.2d 669 (10th Cir.1990),
 
 cert. denied,
 
 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).
 

 Plaintiff has failed to carry her burden of establishing that the agreement should not be enforced according to its terms.
 
 Gustafson, supra.
 
 As there are no genuine issues of material fact and as defendants are entitled to judgment as a matter of law, I shall recommend that defendants’ motion for summary judgment be granted.
 

 IT THEREFORE HEREBY IS RECOMMENDED to the Honorable William G. Cambridge, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) that defendants’ motion for summary judgment (filing 30) be granted.
 

 The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court’s order adopting this recommendation.
 

 Dated December 12,1995.
 

 [1]
 

 . The plaintiff's first, second, and third causes of action fall under the Court’s original jurisdiction. The plaintiff has asked the Court to exercise supplemental jurisdiction over her fourth cause of action.
 

 [1]
 

 . Filing 30 is captioned as a "Motion to Dismiss Plaintiff's Amended Complaint Under Rule 12(B)(6), or in the Alternative, Motion for Summary Judgment Under Rule 56.” In filing 36 I concluded that, because the motion was supported by matters outside the pleadings, it would be considered solely as a motion for summary judgment.
 

 [2]
 

 . The Professional Practices Commission is a twelve-member body appointed by the Governor and charged with maintaining and enforcing professional standards for teachers in the Nebraska public school system.
 
 See Neb.Rev.Stat.
 
 § 79-1280
 
 et seq.
 
 (Reissue 1994).
 

 [3]
 

 . Because a release agreement is a contract,
 
 Watmore v. Ford, 229
 
 Neb. 121, 125, 425 N.W.2d 612 (1988),
 
 overruled on other grounds, Landon v. Pettijohn,
 
 231 Neb. 837, 438 N.W.2d 757 (1989), Nebraska law governs and "ordinary contract principles" apply in determining whether it should be enforced.
 
 See Grant County Sav. & Loan v. Resolution Trust Corp.,
 
 968 F.2d 722, 724 (8th Cir. 1992);
 
 Lancaster v. Buerkle Buick Honda Co.,
 
 809 F.2d 539, 541 (8th Cir.1987),
 
 cert. denied,
 
 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).
 

 [4]
 

 . Enforcement of the release agreement would not bar plaintiff's state law claims arising from the alleged breach of the agreement because those claims did not exist "as of the date of the execution” of the agreement. However, this court’s supplemental jurisdiction over those claims will not be exercised if plaintiff's federal law claims are determined to be barred by the release agreement.
 
 See
 
 28 U.S.C. § 1367(c) (court may decline to exercise supplemental jurisdiction over state law claims where it has “dismissed all claims over which it has original jurisdiction”).
 

 [5]
 

 . The same conclusion can be drawn from examining the current version of section 79-1283, which became operative three months after the parties executed their agreement. That version expressly provides that, following investigation of the complaint, if the Commissioner determines that legally sufficient grounds exist, he may file a petition for adjudication of the matter with the PPC.
 
 Neb.Rev.Stat.
 
 § 79-1283 (Reissue 1994). Thus, the current version makes it explicit that no official action (i.e. a petition for adjudication) is to be taken on a complaint until an investigation of that complaint has been conducted and adequate substantiation has been obtained.
 

 [6]
 

 . I conclude that the words "any complaint" were intended by the parties to be modified by the closing clause of the sentence: “before the Professional Practices Commission or other administrative body with the Nebraska Department of Education.” While the grammatical structure of the sentence, particularly the absence of a comma, would seem to indicate that the "before the [PPC]” clause modifies only the clause immediately preceding it, the tenor of the whole con
 
 *1428
 
 tract suggests otherwise.
 
 Baylor v. Hall,
 
 106 Neb. 786, 184 N.W. 886 (1921) (where a clause would have one application by grammatical construction but whole tenor of the contract indicates that the parties intended the clause to have a different application, the intention of the parties controls).