METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, Assignee of the Claims of Agency One Insurance, Inc., and Pamela A. Siroky, Plaintiff,

v.

WESTPORT INSURANCE CORP., Defendant.

No. 8:13CV78.

United States District Court, D. Nebraska.

Signed Jan. 7, 2015.

**890**

Christopher R. Miller, Miller, Grell Law Firm, Lincoln, NE, for Plaintiff.

Joyce F. Noyes, Robert P. Conlon, Walker, Wilcox Law Firm, Chicago, IL, Michael K. Huffer, Cassem, Tierney Law Firm, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

RICHARD G. KOPF, Senior District Judge.

The issue before the court in this insurance coverage dispute is whether Westport Insurance Corporation ("Westport" or "Defendant"), should have defended and indemnified Agency One Insurance, Inc. ("Agency One"), and its president, Pamela A. Siroky ("Siroky"), on claims concerning a homeowner's policy that was improperly written by Agency One's employee, Doug Inlay ("Inlay"). The claims against Agency One and Siroky were made by Metropolitan Property and Casualty Insurance Company ("Met P & C" or "Plaintiff"), which issued the homeowner's policy and which has since taken an assignment of Agency One's and Siroky's claims against Westport.

Westport has moved for summary judgment and argues there is no coverage under the errors and omissions policy it issued to Agency One because, shortly before it received notice of the Met P & C claim, Westport sent out a "Specified Individual Entity Exclusion" to exclude coverage for any claim arising out of the wrongful acts of Inlay. Westport requests that Plaintiff's action be dismissed and that a declaratory judgment be entered on count I of Westport's counterclaim, declaring that Westport does not owe any defense or indemnity obligation for claims asserted against Agency One and Siroky in an action brought by Met P & G in the United States District Court for the District of Northern Iowa. In response, Plaintiff argues (1) that Westport knew of an actual or potential claim regarding Inlay before it issued the exclusion, (2) that such a unilateral modification of an insurance contact is void under Nebraska law, and (3) that even if the exclusion is valid, Westport still had a duty to indemnify and defend Agency One and Siroky on claims that they negligently failed to train, monitor and supervise Inlay, and were otherwise negligent and breached their fiduciary duties to Met P & G. The motion for summary judgment will be denied.

Plaintiff has moved to dismiss count II of Westport's counterclaim, which was not pleaded at the time the motion for summary judgment was filed, and which requests a declaratory judgment that a con-

sent judgment entered in the Iowa lawsuit is unenforceable because of collusion. Plaintiff argues that Westport's allegations fail to satisfy the particularized pleading requirements of Federal Rule of Civil Procedure 9(b). Westport responds (1) that Rule 9(b) is inapplicable and (2), in any event, that Plaintiff did not object to Westport's motion to amend the counterclaim to add count II. The motion to dismiss will be denied.

## I. DISCUSSION

### A. Defendant's Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and the court must not weigh evidence or make credibility determinations, Anderson, 477 U.S. at 249, 106 S.Ct. 2505.

### 1. Undisputed Facts

As required by the court's local rules, Westport's supporting brief (filing 91) includes a 78-paragraph "statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1).[1] Plaintiff's opposing brief (filing 93) includes an appropriate response to each paragraph. See NECivR 56.1(b)(1).[2] In addition, Plaintiff has included a separate, 74-paragraph "statement of material facts about which there is no dispute," and Westport has responded to each paragraph of this statement in its reply brief (filing 100). The additional facts stated by Plaintiff,[3] and Westport's response, are considered by the court pursuant to Federal Rule of Civil Procedure 56(c)(1). Upon

---

[1]. "The statement of facts should consist of *short* numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph. A fact is 'material' if pertinent to the outcome of the issues identified in the summary judgment motion. The statement of facts must describe the parties and recite all facts supporting the court's venue and jurisdiction. The statement must not contain legal conclusions. *Failure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion.*" NECivR 56.1(a)(2) (underlining in original).

[2]. "The party opposing a summary judgment motion must include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. *Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.*" NECivR 56.1(b)(1) (underlining in original). The movant may, but is not required, to reply to the opposing party's response.

[3]. Several paragraphs of Plaintiff's statement unhelpfully repeat facts that were already set out in Defendant's statement.

review of the briefs and referenced materials, the court finds there is no genuine dispute regarding the following facts stated by the parties.

### a. Defendant's Statement of Material Facts

1. Agency One is an independent insurance agency located in David City, Nebraska. Agency One has been in business since 1996 and places personal, business and financial insurance for its clients through a select number of carriers. *See* Ex. A1 to the Declaration of Joyce F. Noyes ("Noyes Decl."), attached as Ex. A to Index of Evidence in support of Westport's motion for summary judgment (filing 92), at 13:2–11, 18:11–15.

2. Siroky is and has been the President, manager and part-owner of Agency One since 1996. *Id.* at 18:11–23, 68:12–17. Siroky works and has always worked out of the David City, Nebraska office of Agency One. *Id.* at 13:2–6, 58:3–6. Before 1996, Siroky worked in the insurance business for 11 years. *Id.* at 13:9–11.

3. In early 2010, Siroky was introduced to Inlay. *Id.* at 55:13–22. Inlay had been working in Sioux City, Iowa as an agent for Liberty Mutual Insurance Company. *Id.* at 56:14–24, 58:15–17. Inlay advised Siroky that he was dissatisfied and was looking for an opportunity to work as an independent agent, placing policies with different insurance companies. *Id.* at 57:2058:2.

4. Siroky met with Inlay on two additional occasions, the first at his office in Sioux City and the second in Omaha. *Id.* at 59:9–16.

5. Siroky and Inlay discussed ways Inlay could expand Agency One's business, including Inlay writing Iowa business for carriers with whom Agency One was appointed, such as Metropolitan Property and Casualty Insurance Company ("Met P. & C") *Id.* at 63:10–64:10, 67:19–68:3; Ex. A3 to the Noyes Decl. at 2. It was expected that Inlay could expand Agency One's business by placing policies in Iowa where Siroky was not licensed. Ex. A1 to Noyes Decl. at 67:19–68:3.

6. Based at least in part upon the conclusion that Inlay could increase the revenues of Agency One, Siroky agreed that Inlay could join her agency and write insurance policies in Iowa and Nebraska under the Agency One name from his office in Iowa. Ex. A1 to Noyes Decl. at 67:19–68:11; Ex. A3 to Noyes Decl. at 2. To that end, Siroky and Inlay entered into an Agreement dated May 1, 2010. *See* Ex. A4 to Noyes Decl. The Agreement stated that Agency One would retain 3% of all commissions earned on policies written by Inlay. *Id.* at WIC00317.

7. At the time, Inlay had insurance licenses in Nebraska, Iowa and South Dakota. Ex. A1 to Noyes Decl. at 62:23–63:2.

8. After May 1, 2010, Inlay was appointed as an authorized agent with all of the carriers with whom Agency One had appointments to produce and write policies. Ex. A5 to Noyes Decl. at NDOI0000004932.

9. In 2010, the Prudential Insurance Company of America filed suit in the United States District Court for the Northern District of Iowa in the matter styled *The Prudential Insurance Company of America, et al. v. Douglas E. Inlay,* Case No. 10–4072. In that case, Prudential sought a restraining order against Inlay for alleged misappropriation of trade secrets in connection with Inlay's employment by Agency One ("the Prudential case"). Ex. A6 to Noyes Decl. at NDOI000000271–NDOI000000274.[4]

10. By letter dated July 29, 2010, Siroky received a copy of an Order entered

---

4. Plaintiff objects this evidence is irrelevant. The objection is overruled.

by the Court in the Prudential case. *Id.* at NDOI000000270. Counsel for Prudential advised Siroky that Prudential had obtained a restraining order which they construed to bind Agency One. *Id.* Agency One did not notify its errors and omissions carrier, Westport, of the Prudential claim. Ex. A1 to Noyes Decl. at 133:5–9.[5]

11. Prior to April 2010, the Iowa Department of Insurance ("IDOI") had been investigating Inlay's conduct as a licensed insurance producer. *See* Ex. A7 to Noyes Decl., AgOne000022–AgOne000027.

12. The IDOI initially revoked Inlay's Iowa insurance producer's license on May 28, 2010. Ex. A37 to Noyes Decl. at NDOI0000002441.

13. On July 16, 2010, the Iowa Department of Inspections and Appeals issued an Amended Proposed Decision that Inlay's Iowa insurance producer's license should be revoked. Ex. A7 to Noyes Decl. at AgOne000027. The Amended Proposed Decision stated that the issue before the Iowa Department of Insurance was, in part, whether Inlay had made misrepresentations on insurance applications. *Id.* at AgOne000022.

14. By Final Decision dated November 2, 2010, the IDOI revoked Inlay's Iowa insurance producer's license and found that Inlay

> committed numerous insurance transactions that not only violated Iowa insurance law but were to the detriment of his clients or insureds. . . . The record indicates that on numerous occasions, [Inlay's] actions would have resulted in an insured not having the coverage that [Inlay] represented to them that they would have and that they thought they had purchased. Given this, it is necessary to protect the public that [Inlay's]

Iowa insurance producer's license be revoked. [Inlay's] actions are some of the most egregious violations of Iowa insurance law and the public trust that can be committed.

Ex. A8 to Noyes Decl. at AgOne000020–AgOne000021.

15. Inlay was placing insurance policies through Agency One during the time he was investigated by the IDOI and at the time his Iowa license was revoked. Ex. A38 to Noyes Decl. at IIAN 0103.

16. The Nebraska Department of Insurance ("NDOI") commenced an investigation into Inlay's conduct as a licensed insurance producer in August 2010. Ex. A39 to Noyes Decl. at NDOI0000002390.

17. The NDOI suspended Inlay's Nebraska insurance license on October 6, 2010. *Id.* at NDOI0000002392–NDOI0000002394.

18. Siroky admits that she became aware in November 2010 that the IDOI had revoked Inlay's insurance license. Ex. A9 to Noyes Decl., Resp. 6.

19. Siroky further admits that she was aware no later than December 31, 2010 that the NDOI had suspended Inlay's insurance license. *Id.*, Resp. 7.

20. In November 2010, Farmers Mutual of Nebraska, a carrier with whom Agency One was appointed and with whom Agency One placed insurance policies, advised Siroky that it was terminating Inlay's agency authorization because Inlay had lost his Iowa license. Ex. A1 to Noyes Decl. at 81:8–25.[6]

21. Despite her awareness of his licensing and disciplinary issues with the Departments of Insurance in two states, the consumer complaints that had been lodged against him and the insurance company client concerns, Siroky did not terminate

---

**5.** Plaintiff objects this evidence is irrelevant. The objection is overruled.

**6.** Plaintiff objects this evidence is irrelevant. The objection is overruled.

her business relationship with Inlay, and instead allowed him to continue to work for Agency One in the Sioux City, Iowa office throughout 2010 and well into 2011. *Id.* at 91:12–15.[7]

22. Siroky, who worked in the David City, Nebraska office, did not undertake to supervise Inlay's activities in connection with his work for Agency One after she became aware that his Iowa license had been revoked. *Id.* at 92:1–18, 93:23–94:2.[8]

23. After November 2010, Siroky was aware that new insurance policies were being issued out of the Agency One Sioux City office where Inlay worked. *Id.* at 88:17–21.[9] From December 2010 and thereafter, Agency One retained 100% of the commissions on those policies. *Id.* at 89:2–6.

24. Inlay continued to write new policies of insurance out of the Sioux City office. *Id.* at 94:3–9, 95:2–5, 98:10–25.

25. On or about December 7, 2010, while working for Agency One, Inlay submitted an application for a homeowner's property insurance policy to Met P & C on behalf of Patricia Potter and Sam Dedios (collectively "Potter"). *Id.* at 95:2–5; Ex. A10 to Noyes Decl. at 2, 5. In the application, Inlay described the property to be insured as a one-story, 1500 square foot single family residential dwelling built in 1958. Ex. A10 to Noyes Decl. at 5.

26. The property description Inlay submitted on the Potter application was consistent with Met P & C's underwriting guidelines. *Id.* at 2.

27. However, the property that Potter sought to insure was actually a multi-dwelling, two story apartment building. *Id.* Met P & C's underwriting guidelines did not allow Agency One or Inlay to issue a property insurance policy on multi-dwelling, multi-unit properties. *Id.* at 2, 56.

28. If the Potter application had accurately reflected the nature of the property to be insured, Met P & C would not have issued the policy. *Id.* at 6; Ex. A11 to Noyes Decl. at WIC00215.

29. Based on Inlay's inaccurate description, Met P & C issued a property policy to Potter for the period December 10, 2010 to December 10, 2011. *See* Ex. A11 to Noyes Decl.; Ex. A10 to the Noyes Decl. at 5; Ex. A1 to the Noyes Decl. at 96:4–6.

30. Siroky admitted that Inlay was the individual who submitted the application and produced the Potter policy. Ex. A1 to Noyes Decl. at 94:20–95:5.

31. In early 2011, Inlay's work performance began to deteriorate and he was absent from the office on numerous occasions. Ex. A1 to Noyes Decl. at 100:19–101:8.[10]

---

7. Siroky testified that after learning of Inlay's licensing issues, she and Agency One's attorney met with Inlay and it was decided that Inlay would be terminated as an independent contractor and hired an employee to service the Sioux City accounts and to oversee producers in that office. Ex. A1 to Noyes, Decl. at 84:7–86:19; *see also* Ex. A23 to Noyes Decl. Siroky further testified that Inlay agreed he was not allowed to sell, solicit, or produce any insurance business going forward, but the written employment agreement does not expressly prohibit such activities. Ex. A1 to Noyes, Decl. at 87:20–89:21; Ex. 1 to the Declaration of Christopher R. Miller ("Miller Decl."), attached to Index of Evidence in opposition to Westport's motion for summary judgment (filing 94).

8. Plaintiff objects this evidence is irrelevant. The objection is overruled.

9. Plaintiff objects this evidence is irrelevant. The objection is overruled. Siroky testified she would not have known whether the new policies were being written by Inlay or another producer in the Sioux City office. Ex. A1 to Noyes, Decl. at 92:11–20.

10. Plaintiff objects this evidence is irrelevant and cumulative. The objections are overruled.

32. Inlay began to fall behind on his financial obligations with respect to the operation of the Sioux City Agency One office and, in May 2011, Siroky began paying the employees in that office who were to be paid by Inlay. Ex. A10 to Noyes Decl. at 5.

33. On April 20, 2011, the NDOI contacted Siroky by telephone followed by a letter dated April 21, 2011. Ex. A5 to Noyes Decl. at NDOI0000004932. The NDOI requested information regarding Siroky's business relationship with Inlay and policies he had written after March 15, 2011. *Id.* at NDOI0000004933.

34. Siroky sent a letter dated May 6, 2011 to the NDOI. *Id.* In the letter, Siroky admitted that she was aware in November 2010 that Inlay's Iowa license had been revoked. *Id.* at NDOI0000004932.

35. Notwithstanding all of these issues and developments, Siroky did not terminate Inlay's employment with Agency One until August 2011. Ex. A1 to the Noyes Decl. at 91:12–15.

36. At that time, Siroky moved all of the Sioux City files to the David City office. *Id.* at 108:9–20, 109:8–13.

37. Siroky and another Agency One employee reviewed the files and determined that Inlay had included inaccurate information in some policy applications. *Id.* at 109:8–13, 121:17122:22.

38. The Potter policy was due to expire in December 2011, after Inlay had left the employ of Agency One. *Id.* at 96:4–20. Despite the incorrect description of the property in the original application, Agency One facilitated the renewal of the Potter policy in December 2011. *Id.* at 96:21–97:13. Because Met P & C was not ad-

vised of any inaccuracies in the original application that was filled out and submitted by Inlay, Met P & C renewed the Potter policy in December 2011 for an annual term. Ex. A10 to Noyes Decl. at 5.

39. On January 12, 2012, during the 2011–2012 term of the Potter policy, the Potter property was destroyed by fire. Ex. A2 to the Noyes Decl. at ¶ 10.

40. The Potters submitted the claim to Met P & C, which paid the loss. *Id.* at ¶ 11; Ex. A10 to Noyes Decl. at 5–6.

41. From 1996 until 2012, Agency One's insurance industry errors and omissions coverage was provided by Westport. Ex. A1 to Noyes Decl. at 137:10–18.

42. In regard to the 2011–2012 policy, Westport allowed Agency One to submit its application for errors and omissions coverage electronically. *Id.* at 148:6–25; Ex. A12 to Noyes Decl. at 44:9–24, 123:10–20. To facilitate Agency One's application, Westport provided Agency One an internet link to a web-based application. Ex. A12 to Noyes Decl. at 44:9–24, 123:10–20.

43. The application included the following question:

24. Has any past or present agency personnel been the subject of complaints filed and/or disciplinary action by any insurance regulatory authority or convicted of criminal activity?

Ex. A13 to Noyes Decl. at WIC00016.

44. Question 24 was answered in the negative. *Id.;* Ex. A1 to Noyes Decl. at 50:151:4, 150:23–151:6.[11]

45. Siroky understood it was her responsibility as the applicant to review the application, fill in any missing information and ensure that all information included in the application submitted to Westport was accurate. Ex. A1 to Noyes Decl. at 151:23–152:4.[12]

---

11. Theresa Lacinski, an underwriter, testified that Question 24 was pre-filled "No" on the electronic form; if such response was incorrect, it could be changed to "Yes" by the

applicant. Ex. A12 to Noyes, Decl. at 122:12–19.

12. Plaintiff objects this evidence is irrelevant. The objection is overruled.

46. Siroky did undertake to review the application, including Question 24, fill in any missing information and ensure that all information included in the application was accurate. *Id.* at 141:11–147:19.[13]

47. Siroky typed her initials in the signature line of the application, thereby representing that all information and responses were accurate. *Id.* at 153:15–155:10. Accordingly, the 2011 Agency One policy application was "signed" electronically by Agency One's principal, Pam Siroky, on February 1, 2011, when she typed her initials "PS" in the signature line of the application. *Id.;* Ex. A13 to Noyes Decl. at WIC00027.

48. Siroky then caused the application to be submitted to Westport as the application of Agency One for errors and omissions coverage for the policy period incepting February 16, 2011. Ex. A1 to Noyes Decl. at 155:11–19; Ex. A9 to Noyes Decl., Resp. 11.

49. Siroky and Agency One admit that Question 24 on the application should have been answered "yes" based on the information known to Siroky at the time because Siroky and Agency One knew, months before Siroky signed and submitted the application for insurance to Westport, that Inlay's Iowa license had been suspended and/or revoked, and also knew that his Nebraska license had been suspended. Ex. A1 to Noyes Decl. at 50:1–51:4, 162:9–13; Ex. A9 to Noyes Decl., Resp. 6–10.

50. Siroky admits that she should have made sure the answer to Question 24 was "Yes" based on Siroky's knowledge at the time that Inlay's Iowa license had been suspended and/or revoked in late November 2010. *Id.* at 50:1–51:4, 162:9–13.

51. Siroky also personally completed and submitted a Mergers and Acquisition Supplement (dated February 10, 2011) regarding Inlay's business to Westport as part of its application for the 2011 Westport policy. Ex. A1 to Noyes Decl. at 155:20–162:8; Ex. A13 to Noyes Decl. at WIC00028–WIC00030.[14]

52. In the Mergers and Acquisition Supplement dated February 10, 2011, Siroky stated that "Doug Inlay . . . will . . . write under our agency umbrella." (emphasis added.) Ex. A13 to Noyes Decl. at WIC00028.[15]

53. Westport issued Policy No. WED4NE066184505, to the Named Insured Agency One Insurance, Inc. which was in effect for the policy period of February 16, 2011 to February 16, 2012 (the "Westport Policy"). Ex. A14 to Noyes Decl. at WIC00055.

54. The policy period was subsequently extended to May 27, 2012. *Id.* at WIC00204.

55. Westport first learned that Inlay's license had been revoked in July 2011, when responding to inquiries from the Iowa and Nebraska DOIs. Ex. A15 to Noyes Decl. at WIC000521–WIC000522. The Iowa DOI noted in an email to the Westport underwriter that Inlay's Iowa license had been revoked in November 2010 and his Nebraska license was suspended. *Id.* at WIC000522.

56. As a result of the information it learned from the Iowa and Nebraska DOIs, Westport endeavored to find out from Agency One what it knew about Inlay's licensure issues and when Agency

---

**13.** Plaintiff objects this evidence is irrelevant. The objection is overruled.

**14.** Plaintiff objects this evidence is irrelevant. The objection is overruled.

**15.** Plaintiff objects this evidence is irrelevant. The objection is overruled.

One obtained that information. Ex. A16 to Noyes Decl. at WIC000613.

57. Agency One responded to Westport's inquiries in a series of electronic mail messages to the broker, Brenda Kaiser. Ex. A17 to Noyes Decl. at IIAN 0215–IIAN 0216; Ex. A18 to Noyes Decl. at IIAN 0222.

58. At no time did Agency One advise Westport that Siroky knew in November 2010 that Inlay's Iowa license had been revoked. Ex. A1 to Noyes Decl. at 51:11–52:2. Instead, Siroky implied that she had first found out in mid–2011. Indeed, in an August 2, 2011 email to Ms. Kaiser, Siroky stated "The only thing I was aware of was the Prudential Suit trying to enforce their non-compete." Ex. A18 to Noyes Decl., Ex. 9 at IIAN 0222 (emphasis added).[16]

59. Moreover, Siroky told Westport in August 2011 that she had taken custody of all of the files in Inlay's office and was planning on "auditing all the files" to address any issues caused by Inlay's unlicensed activities. Ex. A41 to Noyes Decl. at AgOne000167.[17]

60. In addition, Siroky also reported to Westport in February 2012 that "[w]e have worked diligently for the past 6 months trying to make sure we have closed the gap on any potential E & O claims that could have occurred as a result of Inlay's actions. *As of this date I am happy to report that our efforts have been successful.*" Ex. A42 to Noyes Decl. at IIAN 0307. (emphasis added).[18]

61. Westport received a January 27, 2012 letter from the Nebraska DOI inquiring about Westport's knowledge of Inlay's licensing problems and Westport's coverage for him and Agency One under the Westport Policy. Ex. A19 to Noyes Decl. at WIC00546–WIC00547. Westport responded on February 17, 2012. Ex. A20 to Noyes Decl. at WIC00458–WIC00460.[19]

62. In an email exchange between Westport and the Nebraska DOI on February 22–23, 2012, the Nebraska DOI advised Westport for the first time that Siroky had been aware prior to the date she signed the Westport application for the 2011–2012 Westport policy that Inlay had lost his license. Ex. A21 to Noyes Decl. at WIC00524–WIC00525. In response, Westport asked the Nebraska DOI to provide any evidence the DOI had of Siroky's knowledge. *Id.* at WIC00524.[20]

63. In February 2012, the Nebraska DOI forwarded to Westport a letter dated November 12, 2011 from Siroky in which Siroky admitted that she knew that the Iowa DOI revoked Inlay's license in November 2010. Ex. A22 to Noyes Decl. at WIC01151; Ex. A23 to Noyes Decl. at WIC00313. Westport responded to the Nebraska DOI in a letter dated March 22, 2012. Ex. A23 to Noyes Decl. at WIC00540–WIC00541.[21]

64. The 2011–2012 Westport Policy was to expire on February 16, 2012. Ex. A14 to Noyes Decl. at WIC00055. Because the information Westport had received up to

16. Plaintiff objects this evidence is irrelevant and cumulative. The objections are overruled.

17. Plaintiff objects this evidence is irrelevant and cumulative. The objections are overruled.

18. Plaintiff objects this evidence is irrelevant and cumulative. The objections are overruled.

19. Plaintiff objects this evidence is irrelevant and cumulative. The objections are overruled.

20. Plaintiff objects this evidence is irrelevant and cumulative. The objections are overruled.

21. Plaintiff objects this evidence is irrelevant and cumulative. The objections are overruled.

that time raised certain questions regarding the operations of Agency One and the licensure status of its agents and employees and was otherwise incomplete, to allow Agency One time to provide full information needed for Westport to underwrite the policy, Westport agreed to extend the policy period to April 16, 2012 in exchange for an additional premium, which was paid. Ex. A25 to Noyes Decl. at IIAN 0319; Ex. A14 to Noyes Decl. at WIC00121–WIC00122; Ex. A1 to Noyes Decl. at 229:18–230:1.

65. In March 2012, Ms. Kaiser forwarded to the Westport underwriter an email from Siroky in which Siroky again admitted learning in November 2010 that Inlay had lost his Iowa license. Ex. A40 to Noyes Decl. at AgOne000016.[22]

66. Westport added an endorsement to the policy effective March 26, 2012, which stated:

## SPECIFIED INDIVIDUAL ENTITY EXCLUSION

This INSURANCE INDUSTRY PROFESSIONALS "coverage unit(s)" does not apply to any "claim" or "loss" arising out of any "wrongful act" in the performance of business services by DOUG INLAY or any vicarious liability or apparent authority for liability for any "wrongful act" in the performance of business services by DOUG INLAY.[23] All other conditions remain unchanged. This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required when this endorsement is issued subsequent to the preparation of the policy.)

Endorsement effective 03–26–12 Policy No. WED4NE006184505

Ex. A27 to Noyes Decl. at WIC00203.[24]

67. Westport sent a copy of the Specified Individual Entity Exclusion to the insured Agency One on March 26, 2012 via certified mail, return receipt requested. Ex. A28 to Noyes Decl. at WIC00201–WIC00206; Ex. A1 to Noyes Decl. at 219:22–220:8. In the same envelope, Westport sent an endorsement titled "Amendment of Policy Period" which offered to extend the policy term to May 27, 2012 in exchange for Agency One's payment of an additional premium in the amount of $924.00. Ex. A28 to Noyes Decl. at WIC00204.

68. Westport also emailed a copy of the Specified Individual Entity Exclusion to Agency One's insurance agent Brenda Kaiser. Ex. A29 to Noyes Decl. at IIAN 0348–IIAN 0351. Ms. Kaiser sent a copy of the Specified Individual Entity Exclusion to Agency One on March 28, 2012 via electronic mail. Ex. A30 to Noyes Decl. at AgOne000184; Ex. A1 to Noyes Decl. at 222:16–223:3.

69. Agency One received the Specified Individual Entity Exclusion and the "Amendment of Policy Period" endorsement that Westport sent via certified mail and Agency One executed the return receipt on March 28, 2012. Ex. A28 to Noyes Decl. at WIC00205WIC00206.

22. Plaintiff objects this evidence is irrelevant and cumulative. The objections are overruled. Siroky's email is dated March 12, 2012. Ex. A40 to Noyes Decl. at AgOne000016.

23. Westport's statement of facts omits the phrase "or apparent authority for liability."

24. In response, Plaintiff does not dispute that the Westport endorsement is dated as being effective March 26, 2012. Ex. A27 to Noyes, Decl. at WIC00203.

70. Siroky understood that the extension period would be subject to the exclusion based upon the date of the endorsement adding the exclusion. Ex. A1 to Noyes Decl. at 226:2–19.[25]

71. Agency One paid the premium for the extension of the policy period by check on March 28, 2012, the same day that Agency One received the Specified Individual Entity Exclusion and the "Amendment of Policy Period" endorsement. Ex. A26 to Noyes Decl. at 99:5100:4; Ex. A31 to Noyes Decl. at IIAN0665.

72. On April 2, 2012, Siroky submitted a "Professional Liability Claim Form" to Westport. Ex. A32 to Noyes Decl. at WIC00219–WIC00234. Along with the form, Agency One included a March 30, 2012 claim letter from an attorney for Met P & C. Id. at WIC00224WIC00225.[26] The letter stated that, during the time period he was employed by Agency One, Inlay wrongfully issued a Metropolitan P & C homeowner's policy to Potter with a period of December 15, 2010 to December 10, 2011. Id. The letter alleged that had Inlay

accurately described the premises to be insured, Met P & C would not have issued the policy to Potter. Id. at WIC00225.

73. The letter claimed damages arising from Met P & C's payment to the insured for fire damage to the property. Id.

74. Westport acknowledged receipt of the claim by letter dated April 5, 2012. Ex. A33 to Noyes Decl. at WIC00255. On May 11, 2012, Westport subsequently issued a declination of coverage. Ex. A34 to Noyes Decl. at WIC00304–WIC00306.[27]

75. On May 31, 2012, an attorney for Agency One and Siroky forwarded to Westport a copy of the complaint filed in *Metropolitan Property & Casualty Insurance Company v. Agency One Insurance, Inc. and Pamela A. Siroky*, Civil No. 12–cv–4050, in the United States District Court for the Northern District of Iowa (the "Met P & C Lawsuit"). Ex. A35 to Noyes Decl. at WIC00339–WIC00348.

76. The complaint in the Met P & C Lawsuit alleged that Agency One, through Mr. Inlay, caused Met P & C to issue a policy to Potter for property located in

---

**25.** This paragraph is restated to conform to the evidence. Although Plaintiff does not directly dispute Westport's statement that "Siroky knew that if she accepted Westport's offer to extend the policy period to May 27, 2012, the terms would include the Specified Individual Entity Exclusion," the cited deposition testimony does not support this statement. The restated paragraph is consistent with Siroky's testimony. In its response, Plaintiff "does not dispute that [Agency One] knew Westport's offer to extend the policy period to May 27, 2012, the terms would include the Specified Entity Exclusion," but states Agency One "already knew its policy would be non-renewed" and contends Agency One "had no other options but to accept the extension and exclusion so it could attempt to find other insurance coverage. Ex. A1 to Noyes Decl. at 224:19–225:22." Plaintiff's brief, p. 6. Plaintiff also states, "Agency One was never told by Brenda Kaiser or Westport that she [sic] could dispute the exclusion. Id." Plaintiff's brief, p. 6.

**26.** The attorney's March 30, 2012 claim letter was also addressed to Westport. Ex. A32 to Noyes Decl. at WIC00224–225.

**27.** Westport declined coverage because of the Specified Individual Entity Exclusion, stating:

[T]he claim by Metropolitan was made on Agency One sometime on or after March 30, 2012, and before, or at the latest, April 2, 2012. At that time, the endorsement excluding Mr. Inlay from coverage as of effective date March 26, 2012 under the Westport policy was in effect. This claim involving Metropolitan and Mr. Inlay must be reviewed under the policy in effect at that time including the endorsement excluding any claim related to activity by Mr. Inlay. Since the error was committed by Mr. Inlay that lead to this claim, any coverage under the Westport policy for this matter is excluded.

Ex. A34 to Noyes Decl. at WIC00306.

Sioux City, Iowa. *Id.* at WIC00342, ¶¶ 5–9. The application for insurance submitted by Inlay and Agency One described the premises as a 1500 square foot single-family residence, when it was actually a 4320 square foot commercial building containing 6 apartments. *Id.* at WIC00342–WIC00343, ¶¶ 7, 12. The complaint further alleges that had the premises been accurately described, Met P & C would not have issued the policy, as it was not within the class of risks that Met P & C had authorized Agency One to underwrite. *Id.* at WIC00343–WIC00344, ¶¶ 17–18.

77. Met P & C sought to recover for the loss it was required to pay under the policy issued by Inlay to Potter. *Id.* at WIC00343–WIC00348.

78. On August 28, 2012, Westport sent a declination of coverage letter regarding the Met P & C Lawsuit to the attorney for Agency One and Siroky and to Siroky directly. Ex. A36 to Noyes Decl. at WIC00685–WIC00692.[28]

### b. Plaintiff's Statement of Material Facts

1. Agency One Insurance, Inc. is an independent insurance agency located in David City, Nebraska. Agency One has been in business since 1996 and places personal, business and financial insurance for its clients through a select number of carriers. Ex. A1 to Noyes Decl., at 13:2–11, 18:11–15.

2. Pamela A. Siroky ("Siroky") is and has been the President, manager and part-owner of Agency One since 1996. *Id.* at 18:11–23, 68:12–17. Siroky works and has always worked out of the David City, Nebraska office of Agency One. *Id.* at 13:2–6, 58:3–6. Before 1996, Siroky worked in the insurance business for eleven years. *Id.* at 13:9–11.

3. In early 2010, Agency One and Siroky (collectively "Agency One") was introduced to Inlay. *Id.* at 55:13–22. Inlay had been working in Sioux City, Iowa as an agent for Liberty Mutual Insurance Company. *Id.* at 56:14–24, 58:15–17. Inlay advised Agency One that he was dissatisfied and was looking for an opportunity to work as an independent agent, placing policies with different insurance companies. *Id.* at 57:20–58:2.

4. On May 1, 2010, Agency One and Inlay entered into an Independent Agent Agreement. Ex. A4 to Noyes Decl.

5. At the time, Inlay was licensed to write insurance in both Nebraska and Iowa and it was determined that Agency One would open a Sioux City, Iowa office in which Inlay would write insurance. Ex. A1 to Noyes Decl. at 67:19–68:11; 62:23–63:2.

6. Westport is one of the insurance companies under the Swiss Re Corporate Solutions ("Swiss Re") umbrella. Ex. A12 to Noyes Decl. at 6:24:7–15.[29]

---

**28.** This declination of coverage letter states, in part:

> Westport respectfully declines coverage under the Policy, including any defense obligations and any indemnity for any loss incurred in this action, including any settlement or judgment entered by the court, for the following reason.
> The Claim Letter alleges that Mr. Inlay bound the Potter policy when he was not licensed to do so. The Complaint alleges that Agency One and Ms. Siroky are vicariously liable for Inlay's issuance of policies he bound while not licensed, including the

Potter policy. Therefore, coverage under the Policy is precluded by the Specified Individual Entity Exclusion.

Ex. A36 to Noyes Decl. at WIC00688–WIC00689.

**29.** In paragraphs 11, 12, 38, 39, 40, 41, 42, 71, 72, 73, and 74 of Plaintiff's statement of material facts, Plaintiff asserts that Westport admitted certain facts or took a certain position though the deposition testimony of Theresa Lacinski, an underwriter at Swiss Re (Ex. A12 to Noyes Decl.), and Edward Barbosa, a former claims adjuster at Swiss Re (Ex. 6 to

7. Brenda Kaiser ("Kaiser") has been employed by Independent Insurance Agents of Nebraska ("IIAN") since 1989 and is currently its Membership Programs Director Ex. A26 to Noyes, Decl., at 7:24–8:6.

8. One of Kaiser's duties is to sell errors and omissions insurance policies ("E & O") from various insurance carriers to insurance industry professionals in the State of Nebraska. Ex. A26 to Noyes, Decl., at 18:1–25; Ex. A1 to Noyes, Decl., at 267:18–268:4. Westport is one such carrier in which Kaiser has such a relationship. *Id.*

9. Kaiser's duties include reviewing and submitting applications and renewal applications, issuing quotes, issuing policies, and receiving and paying premiums to Westport. *Id.* at 21:14–22:19. Kaiser also has authority to bind Westport insurance coverage (once she receives a quote and approval from the Westport underwriter). *Id.* at 127:13–128:5.[30]

10. For insurance industry professional insureds such as Agency One, Kaiser acted as the middleman between those insureds and Westport. Ex. A26 to Noyes, Decl., at 23:21–25. This means that when Kaiser received communication from Westport regarding an insured, she was responsible for conveying that communication to the insured. Likewise, if Kaiser received communication from an insured like Agency One, she was responsible for conveying that communication back to Westport. *Id.* at 23:24–24:19.

\* \* \*

13. Following an investigation, the Iowa Department of Insurance ("IDOI") revoked Inlay's license in a Final Decision dated November 2, 2010. Ex. A8 to Noyes Decl. at AgOne000020–AgOne000021.

14. The Nebraska Department of Insurance ("NDOI") suspended Inlay's Nebraska license on October 6, 2010. Ex. A39 to Noyes Decl. at NDOI0000002392–94.

15. Agency One learned of Inlay's licensing issues in November 2010. Ex. A9 to Noyes Decl., Resp. 6, 7.[31]

16. Upon learning of the licensing issues, Agency One terminated Inlay (as an independent agent). Ex. A23 to Noyes Decl.; Ex. A1 to Noyes, Decl. at 87:9–21.[32]

17. Agency One then rehired Inlay as an employee so that he could service the accounts of its' existing Iowa customers. Ex. A1 to Noyes, Decl. at 87:22–90:3; Ex. 1 to Miller, Decl.[33]

18. Agency One still had another producer, Joe Sauce, who was selling insurance from the Sioux City office. Ex. A1 to Noyes, Decl. at 90:17–89:6.[34]

---

Miller Decl.). As to each of these paragraphs, Westport objects that the deponent testified in a personal capacity only, and not as a corporate representative. Westport's objections are sustained and these paragraphs are stricken from Plaintiff's statement of material facts.

**30.** The parenthetical qualification is made by Westport in response.

**31.** In response, Westport does not dispute that Agency One was aware in November 2010 that Inlay's Iowa license had been revoked and states that Agency One was aware no later than December 31, 2010 that Inlay's Nebraska license had been suspended.

**32.** The parenthetical qualification is suggested by Westport's response.

**33.** Plaintiff again states that "Inlay agreed he was not allowed to sell, solicit, or produce any insurance business going forward." As previously noted, Siroky testified to this fact but the written employment agreement does not expressly prohibit such activities. Accordingly, the statement is disputed by Westport.

**34.** Plaintiff's further statement that Inlay "agreed to cease being a producer" is disputed by Westport.

19. Inlay submitted an application for a homeowner's policy to Met P & C on behalf of Patricia Potter and Sam Dedios (collectively "Potter") on or about December 7, 2010. Ex. A1 to Noyes Decl. at 95:2–5; Ex. A10 to Noyes Decl. at 2, 5.[35]

20. At the time the Potter application was submitted, Agency One did not know that Inlay had submitted that application. Ex. A1 to Noyes Decl. at 94:3–15; 98:1–99:25.

21. The Potter application did not accurately reflect the nature of the property seeking to be insured, however Met P & C issued a property policy to Potter for the period December 10, 2010 to December 10, 2011. Ex. A11 to Noyes Decl.; Ex. A10 to the Noyes Decl. at 5; Ex. A1 to the Noyes Decl. at 96:4–6.

22. In August 2011, Agency One terminated the employment of Inlay. Ex. A1 to the Noyes Decl. at 91:12–15.

23. In December 2011, the Potter policy was renewed for another 12 months. Ex. A10 to Noyes Decl. at 5.

24. On January 12, 2012, the Potter property was destroyed by fire. Ex. A2 to the Noyes Decl. at ¶ 10. The Potters submitted the claim to Met P & C who paid the loss. Ex. A2 to Noyes Decl. at ¶ 11; Ex. A10 to Noyes Decl. at 5–6.

25. It was not until February or March of 2012 that Agency One learned that Inlay was the individual who had submitted the Potter application. It was also at that time that Agency One learned Inlay continued to sell insurance in Iowa. Ex. A1 to Noyes Decl. at 94:3–15; 98:1–99:25.[36]

26. From 1996 until 2012, Agency One's E & O coverage was provided by Westport via Kaiser. Ex. A1 to Noyes Decl. at 137:10–18; Ex. A26 to Noyes, Decl., at 20:1–22:25. During this time period, Agency One never filed a claim with Westport under its E & O coverage. Ex. A1 to Noyes Decl. at 46:18–23.

27. The E & O policy in question in this matter was issued by Westport to Agency One for the policy term February 16, 2011—February 16, 2012. Ex. A14 to Noyes Decl.[37]

28. The application for this E & O coverage was electronic in nature and question no. 24 of the application asked "has any past or present agency personnel been the subject of complaints filed and/or disciplinary actions by any insurance regulatory authority or convicted of criminal activity?" Ex. A12 to Noyes Decl. at 44:9–24, 123:10–20; Ex. A13 to Noyes Decl. at WIC00016.

29. The electronic application automatically populated the answers to certain questions, one of which was question no. 24. Ex. A26 to Noyes Decl. at 36:23–37:5, 49:4–24.[38]

30. Agency One inadvertently failed to change the answer to question no. 24 to "Yes" based on its knowledge of the investigations regarding Inlay. Ex. A13 to Noyes Decl. at WIC00016; Ex. A1 to Noyes Decl. at 50:151:4, 150:23–151:6.

---

35. Plaintiff's statement that Inlay submitted the application "despite telling Agency One he would not sell, solicit, or write insurance" is disputed by Westport.

36. Westport notes that in July 2011, after receiving a call from one of Inlay's clients, Siroky "was suspicious that Inlay may have actually written a policy while not licensed." Ex. A30 to Noyes Decl. at AgOne000191.

37. Plaintiff erroneously references Ex. A18 to the Noyes Declaration.

38. This paragraph is restated to conform to the evidence. Plaintiff states question no. 24 "was auto-filled 'No,' but the cited testimony does not include this fact.

31. Following the application, Westport issued Policy No. Westport issued Policy No. WED4NE006184505, to the Named Insured Agency One Insurance, Inc. which was in effect for the policy period of February 16, 2011 to February 16, 2012 (the "Policy"). Ex. A14 to Noyes Decl. at WIC00055.[39]

32. The Policy is a claims made policy. Ex. A14 to Noyes Decl.

33. Kaiser was the "producing agent" of the Policy and (together with other individuals) signed the Policy on behalf of Westport. *Id.* at 94:20–25; Ex. A14 to Noyes Decl. at WIC00056.[40]

34. The Policy provided (among other things) that "the insured shall … provide written notice of any "claim" to us or any producing agent shown on the Declarations Page as soon as practical. Any "potential claims" must be reported to us in writing during the "policy period" or Extended Reporting Period." Ex. A14 to Noyes Decl. at WIC00057.[41]

35. The Westport Policy defines "claim" or "claims" in part as "… that an insured has received notice of a written demand, or a written demand for money or services …" Ex. A14 to Noyes Decl. at WIC00059.

36. The Westport Policy defines "potential claim" as when "you … become aware of a proceeding, event, or development which has resulted in or could in the future result in the institution of a "claim" against the insured." Ex. A14 to Noyes Decl. at WIC00060.

37. Claims are sometimes submitted to Westport by brokers. Ex. 6 to Miller Decl. at 29:12–22.[42]

\* \* \*

43. On June 22, 2011, IDOI contacted Westport and inquired about the Westport Policy and its application to Inlay. Ex. A16 to Noyes Decl., at WIC00615.[43]

44. On July 1, 2011, IDOI emailed Westport that Inlay's license had been revoked in November 2010 and that his Nebraska license was suspended. In that email, IDOI asked Westport various questions regarding its knowledge of the situation. Ex. A12 to Noyes Decl. at 91:20–95:15; Ex. A15 to Noyes Decl., WIC00522.

45. It was not until twenty-four days later that Westport responded to the NDOI's questions in this regard. Ex. A15 to Noyes Decl., WIC00520.[44]

46. Westport was initially contacted by the IDOI and Westport responded to the IDOI's requests for information. *See, e.g.,* Ex. A16 to Noyes Decl. at WIC00613–WIC00616. Westport then contacted the broker to determine whether Siroky and Agency One were aware of the allegations regarding Inlay. *See* Ex. A16 to Noyes Decl. at WIC00613; Ex. A17 at IIAN 0215–IIAN0217.[45]

---

**39.** A typographical error in the policy number is corrected.

**40.** The parenthetical clause is suggested by Westport's response.

**41.** The parenthetical clause is suggested by Westport's response.

**42.** Barbosa testified that in those instances, the broker would be passing the information on from the insured. Ex. 6 to Miller Decl. at 29:17–18.

**43.** Westport does not dispute that on June 22, 2011, it sent an email to John Leonhart of the IDOI regarding the Westport policy and its application to Inlay. Ex. A16 to Noyes Decl. at WIC00615–WIC00616.

**44.** Westport does not dispute that it responded to the IDOI's July 1, 2011 email on July 25, 2011. Ex. A15 to Noyes Decl. at WIC00520–WIC00521.

**45.** Westport's response is substituted for Plaintiff's statement because Plaintiff's statement is not supported by the referenced exhibits.

47. In the course of its investigation, Westport learned that Inlay was no longer employed by Agency One. Ex. A12 to Noyes Decl. At 110:1–23.

48. Nearing the end of its investigation, Westport sent Kaiser an email on August 2, 2011 which stated:

Please advise Pam [Siroky] that due to these circumstances, I [Westport] have decided that any coverage for any activities performed by Mr. Inlay must be excluded from the policy since it seems that when Mr. Inlay signed on with Agency One, he was not a licensed producer in IA or NE. Advise Pam that *this simply means we will not provide any defense for Mr. Inlay. Agency One will still have coverage in the event a claim is filed due to Mr. Inlay's behavior* as long as such claim falls under the policy requirements and conditions.

Ex. A18 to Noyes Decl. at IIAN0224 (emphasis added).[46]

49. Kaiser forwarded this email to Agency One that same day. *Id.*

50. Despite the inference in the August 2, 2011 email, Westport did not issue an exclusion regarding Inlay at that time and Inlay remained covered under the Policy.

Ex. A12 to Noyes Decl., at 131:14–24, 135:1–7; Ex. A26 to Noyes Decl., at 138:5–17.[47]

51. The Policy was due to be renewed on February 16, 2012. Ex. A12 to Noyes Decl., at 118:18–23. Westport asked for nothing further from Agency One regarding Inlay between August 2011 and February 2012. Ex. A12 to Noyes Decl., at 118:18–23.

52. On February 16, 2012, rather than renew the policy or send out a notice of nonrenewal, Westport extended the Westport Policy 60 days, until April 16, 2012. Ex. 2 to Miller Decl. at IIAN0319.[48]

53. Agency One provided Kaiser with certain information in an email dated February 23, 2012. Kaiser sent that information to Westport on the same date. Ex. 3 to Miller Decl. at IIAN0254.[49]

54. That February 23, 2012 email from Agency One to Kaiser (which was ultimately sent to Westport) provided, in part,

Unfortunately, Mr. Inlay did write insurance policies ... I have been told by MetLife that the policies that were identified as accounts written by Inlay were moved in house. The rest of the accounts are being non-renewed. There

---

**46.** Westport does not dispute that it sent Kaiser an email on August 2, 2011 which contained the quoted language.

**47.** Westport does not dispute that it did not issue an exclusion regarding Inlay at that time and Inlay remained covered under the Policy, subject to all of the other terms, conditions, exclusions and provisions of the Policy.

**48.** In a February 16, 2012 email to Kaiser, Lacinski stated that Westport needed information regarding additional locations, independent contractors and the status of all licensed employees. Agency One was requested to confirm that all licenses were active, that there were no current DOI investigations of employees or contractors, and that there had not been any for the past 5 years. Ex. 2 to Miller Decl. At IIAN0254.

**49.** This paragraph is modified to conform to the evidence. Plaintiff states that "Westport indicated to Kaiser that it was simply waiting on further information from Agency One related to current independent contractors," and that "Agency One provided Kaiser such requested information in an email dated February 23, 2012." The referenced exhibits (Ex. 2 & 3 to Miller Decl. at IIAN0254) do not support this statement. Exhibit 2 is an email exchange between Lacinski and Kaiser in which Kaiser states that she had Agency One's renewal questionnaire, but was waiting to receive a list of the agency's independent contractors; Exhibit 3 does not include a list of the agency's independent contractors.

were some habitational risks that we had identified as being written incorrectly by Inlay. I gave that information to MetLife.

*Id.* at IIAN0255.[50]

55. A day later, on February 24, 2012, Agency One sent Kaiser an email which said, in part,

> there were several habitational risks that Inlay wrote with MetLife that were not written properly. I had a conference call with my MetLife underwriter and marketing reps back in February. We together identified those accounts and they have been non-renewed. They are off the books as of 2/22/2012. *There was a claim on an account in Sioux City that Inlay wrote. MetLife is still in the investigative process on that one. I talked to the adjustor the other day, and the claim is under investigation with MetLife right now. They will stay in close contact with me if there will be a problem on that one. As of right now that could be the only potential problem we could have.*

Ex. 4 of Miller Decl., at IIAN0328. (emphasis added).

56. Kaiser forwarded that email on to Westport that same day, on February 24, 2012. *Id.*

**50.** Westport comments that the February 23, 2012 email does not reference the property policy issued to Potter.

**51.** This paragraph is modified to conform to the evidence. Plaintiff's states, "On March 26, 2012, Westport extended the Policy for another 60 days until May 27, 2012." The first extension was for a period of 60 days, from February 16, 2012, until April 16, 2012, but the "Amendment of Policy Period" endorsement that was issued on March 26, 2012, only extended the policy by 41 additional days. The endorsement states that "the 'Policy Period' shown on the Declarations or most recent renewal endorsement is amended to read: From: February 16, 2011 To: May 27, 2012." Ex. A14 to Noyes Decl. at

57. On March 26, 2012, Westport extended the Policy until May 27, 2012. *Id.* at AgOne000189. Westport charged an additional premium for this extension, which Agency One paid. Id; Ex. A31 to Noyes Decl. at IIAN0665. Ex. A30 to Noyes Decl. at AgOne000190.[51]

58. At around the same time, Westport issued a Specified Individual Entity Exclusion ("Exclusion") regarding Inlay, showing an effective date of March 26, 2012, and a letter of nonrenewal. Westport sent the Exclusion and the nonrenewal letter to both Kaiser and Agency One. Ex. A12 to Noyes Decl. at 154:14–20; Ex. A27 to Noyes Decl. at WIC00203.[52]

59. Agency One received the Exclusion from Kaiser via email on March 28, 2012 and from Westport via certified mail on that same date. Ex. A30 to Noyes Decl. at AgOne000184; Ex. A1 to Noyes Decl. at 222:16–223.

60. On March 30, 2012, only two days after Agency One received the Exclusion and notice of nonrenewal, an attorney for Met P & C sent Agency One and Westport a claim letter regarding the Potter property. Ex. A32 to Noyes Decl. at WIC00219–WIC00224–225.[53]

61. The claim letter alleged Inlay improperly bound insurance with Met P & C regarding the Potter property. *Id.*[54]

WIC00204. The effective date of this endorsement is stated to be April 16, 2012. *Id.*

**52.** This paragraph is modified to conform to the evidence. Plaintiff states the exclusion "was dated March 26, 2012." Actually, this was the effective date.

**53.** Westport does not dispute that on March 30, 2012, an attorney for Met P & C sent Agency One and Westport a claim letter regarding the Potter property.

**54.** This paragraph is modified to conform to the evidence. Plaintiff states the claim letter also alleged "that Agency One failed to properly supervise Inlay." The claim letter does contain such a statement.

62. On April 2, 2012, Agency One emailed Kaiser a copy of the claim letter it had received from the Met P & C attorney. Ex. 5 to Miller Decl. at WIC00632. In that email, Agency One said "this is the one and only policy that I had told you might come back to us." *Id.*[55]

63. On April 2, 2012, Agency One submitted a formal claim form to Westport. Ex. A32 to Noyes Decl. at WIC00219–WIC00234.

64. Westport declined coverage and refused to defend or indemnify Agency One. Ex. A34 to Noyes Decl. at WIC00304–WIC00306.

65. On May 31, 2012, an attorney for Agency One forwarded to Westport a copy of the complaint filed in *Metropolitan Property & Casualty Insurance Company v. Agency One Insurance, Inc. and Pamela A. Siroky,* Civil No. 12–cv–4050, in the United States District Court for the Northern District of Iowa (the "Met P & C Lawsuit"). Ex. A35 to Noyes Decl. at WIC00339–WIC00348.

66. The complaint in the Met P & C Lawsuit was brought only against Siroky and Agency One, and alleged that they were liable for Inlay's actions in improperly submitting an application to Met P & C for the Potter property. *Id.* Specifically, the complaint alleged Agency One failed to adequately train, monitor and supervisor their employees and producers in the investigation, application, binding and issuing of a Met P & C policy. *Id.* at WIC00345, WIC00347.

67. On August 28, 2012, Westport sent a letter regarding the Met P & C lawsuit declining to defend or indemnify Agency One. Ex. A36 to Noyes Decl. at WIC00685–WIC00692.

68. The Policy was never rescinded, but if a mid-term rescission had occurred, Agency One would have recouped a portion of the premium it paid. Ex. A12 to Noyes Decl. at 180:2–23.

69. Westport never returned or reimbursed Agency One any amount of premium after the Specified Individual Entity Exclusion was issued. Ex. A12 to Noyes Decl. at 189:7–11. In fact, it accepted additional premium from Agency One for the extensions of the Policy. Ex. A31 to Noyes Decl. at IIAN0665. Ex. A30 to Noyes Decl. at AgOne000190.

\* \* \*[56]

### 2. *Notice of Claim*

Plaintiff argues Westport had actual or constructive notice of the claim involving the Potter property before the Specified Individual Entity Exclusion went into effect. It notes that Westport first learned of Inlay's licensure issues in June 2011. *See* paragraphs 43–47 of Plaintiff's Statement of Material Facts. Westport subsequently notified Agency One, in August 2011, that "any coverage for any activities performed by Mr. Inlay must be excluded from the policy since it seems that when Mr. Inlay signed on with Agency One, he was not a licensed producer in IA or NE." *Id.* at ¶ 48. Despite this notice, no exclusion was issued until March 26, 2012. Plaintiff theorizes that the exclusion was issued at that time because about a month before, on February 23 and 24, 2012, Siroky had informed Kaiser in emails, which were immediately forwarded to Westport,

---

**55.** This paragraph is modified to conform to the evidence. Plaintiff asserts that the quoted statement was made with "reference to the February 24, 2012 email in paragraph 55 above." The document does not support this assertion.

**56.** Paragraph 70 of Plaintiff's statement is stricken because it is not supported by the referenced exhibit. As previously noted, paragraphs 71–74 are also stricken.

that "[t]here were some habitational risks that we had identified as being written incorrectly by Inlay" and that she "gave that information to MetLife." Ex. 3 to Miller Decl. at IIAN0255. Siroky advised that those MetLife accounts were "non-renewed" and "off the books as of 2/22/2012," but that "[t]here was a claim on an account in Sioux City that Inlay wrote" which MetLife was still investigating. Ex. 4 of Miller Decl. at IIAN0328. Siroky indicated that "[a]s of right now that could be the only potential problem we could have." *Id.*

■ "[W]here an insurance policy requires that a claim be made and reported during the policy period or an extended reporting period in order for the loss to be treated as falling within the coverage of the policy, failure to comply with the reporting requirement is sufficient to defeat coverage without a showing of prejudice to the insurer in the absence of a specific policy provision to the contrary." *Countryside Co-op. v. Harry A. Koch Co.*, 280 Neb. 795, 790 N.W.2d 873, 886 (2010). The Westport policy is a "claims made" policy and its reporting requirements are very explicit:

The insured shall:

1. provide written notice of any "claim" to us or the producing agent shown on the Declarations Page as soon as practical. Any "potential claims" must be reported to us in writing during the "policy period" or Extended Reporting Period, If, during the "policy period," you or any owner, officer or partner of the "named insured" first become aware of a "potential claim" and give written notice of such "potential claim" to us during the "policy period," any "claims" subsequently made against an insured arising from the "potential claim" shall be considered to have been made during the "policy period" that you or

any owner, officer or partner of the "named insured" first became aware of such "potential claim";

* * *.

4. include within any notice of "claim" or "potential claim" a description of the "claim" or "potential claim," the alleged "wrongful act(s)," including the date(s) it was committed, a summary of the facts upon which the "claim" or "potential claim" is based, the alleged or potential damage or "loss" that may result from the "wrongful act," the names of actual or potential claimants, the names of insured(s) and employees against whom the "claim" was or may be made, and the date and circumstances by which you or any owner, officer, or partner of the "named insured" first became aware of the "claim," or "potential claim."

Notice to us under the "policy" shall be given to:

Westport Insurance Corporation
5200 Metcalf
Overland Park, KS 66201
Telephone number: 1–800–241–3470
Facsimile Number: 1–877–880–1590
Attention: Westport Claims Department

All notices under the "policy" shall be in writing, shall comply with the time requirements as stated in the "coverage units," and shall be given by confirmed facsimile, prepaid express courier, certified U.S. Mail, return receipt requested. Except as provided in the Termination of Coverage Section of these GENERAL TERMS & CONDITIONS, any notice shall be effective on the fate of our receipt at the above address.

Ex. A14 to Noyes Decl. at WIC00057–WIC00058.

■ Even assuming that the "potential problem" referenced in Siroky's email was

the Potter policy, the specific information required by paragraph 4 above was not provided. Also, electronic mail is not one of the authorized methods for giving notice of a potential claim, and Siroky's email was not even sent to Westport's claims department as required by the policy. Instead, the email was forwarded to Westport's underwriting department in connection with the policy renewal process. Such notice was insufficient as a matter of law. Thus, Plaintiff must rely upon the formal notice of claim that was sent on April 2, 2012.

### 3. Effectiveness of the Exclusion

■ "In order that there may be a modification [of an insurance contract], there must be an agreement therefor, supported by consideration, and neither party has a right to modify the contract without the consent of the other party." *Ruby Co-op. Co. v. Farmers Elevator Mut. Ins. Co.*, 197 Neb. 605, 250 N.W.2d 239, 242 (1977) (insurer could not unilaterally modify insurance contract by cancelling coverage for a portion of the scheduled property); *see also Assicurazioni Generali S.P.A. v. Black & Veatch Corp.*, 362 F.3d 1108, 1114 (8th Cir.2004) ("Since the modification [of an insurance contract] is contractual in nature, it follows that there must be consideration to support the obligation of each party thereunder, at least where the modification affects the coverage terms of the policy.").

■ Westport contends Agency One consented to the Specified Individual Entity Exclusion by accepting the second extension of the policy (from April 16, 2012, until May 27, 2012), and that such 41–day

extension provided the necessary consideration for the reduction in coverage. It argues that "by paying the additional premium on [March 28, 2012], without comment and without raising any questions or concerns whatsoever, Agency One and Siroky accepted both the extension of the duration of the policy and also the addition of the exclusion." Westport's reply brief, p. 23. One difficulty with this argument is that the endorsement extending the policy period for a second time did not go into effect until April 16, 2012, but the Specified Individual Entity Exclusion purportedly became effective three weeks earlier, on March 26, 2012.

While Siroky admitted in her deposition that she "understood that the extension period would be subject to the exclusion based upon the date of the endorsement adding the exclusion," *see* paragraph 70 of Defendant's Statement of Material Facts, it has not been established that Siroky understood or agreed that the exclusion could go into effect before the second extension. The evidence does establish, however, that Met P & G made a claim against Agency One on March 30, 2012, which was two weeks before the second extension went into effect.

Westport claims it "wanted to protect its insured and leave the policy in place" for another 41 days. Westport's reply brief, p. 24. Under the express terms of the policy, though, Agency One was entitled to have the insurance renewed for a period of one year if Westport failed to provide timely notice of its intention not to renew the policy.

As required by Nebraska law,[57] the insurance policy contained a 60–day notice

---

57. Nebraska Revised Statutes § 44–522(2) requires that "[o]n any policy or binder of property, marine, or liability insurance, as specified in section 44–201, the insurer shall give the insured sixty days' written notice prior to cancellation or nonrenewal of such policy or

binder, except that the insurer may cancel upon ten days' written notice to the insured in the event of nonpayment of premium...." The statute further provides that "[f]or purposes of this section, ... [a]n insurer's substi-

requirement for non-renewal.[58] Thus, the policy provided:

> You shall have a right to renewal of this policy on the terms then being applied by us to similar risks for an additional period of time equivalent to the expiring term if the agreed term is a year or less, or for one year if the agreed term is longer than one year, unless at least 60 days prior to the date of expiration of the policy term a notice of intention not to renew the policy beyond such agreed expiration date is mailed to you.

Ex. A14 to Noyes Decl. at WIC00082.

The evidence shows that Agency One was notified of the second extension on a March 26, 2012, when Kaiser sent an email to Siroky, stating:

> Hi Pam—Swiss Re/Westport is once again extending the expiration date on policy # WED4NE006184505. The new policy expiration date is now May 27, 2012. The gross premium to extend to the latter part of May is $924. Please remit premium (payable to NASC) in the amount of $924 by no later than March 29th. Please send to 8231–B Northwoods Dr., Lincoln, NE 68505.

Ex. A30 to Noyes Decl. at AgOne000189. When this notification was received, the

policy's expiration date of April 16, 2012, was only 21 days away.[59]

The evidence also shows that Agency One's check for the second extension was received by Kaiser on March 28, 2012. *See* Ex. A26 to Noyes Decl. at 99:5100:4; Ex. A31 to Noyes Decl. at IIAN0665. It is not known when the check was issued, but presumably it was mailed prior to that date in response to Kaiser's March 26th email. The email did not mention the Specified Individual Entity Exclusion, so Siroky may have been unaware of the exclusion when the payment was made.

A few minutes after sending the March 26th email about the second extension, Kaiser sent another email to Siroky stating, "I have learned today that Swiss Re/Westport is going to non-renew your current policy effective May 27th...." Ex. A30 to Noyes Decl. at AgOne000188. The formal notice of non-renewal was received by Agency One on March 28, 2012, by certified mail. *See* Ex. A28 to Noyes Decl. at WIC00201. In other words, the non-renewal notice was received exactly 60 days in advance of the newly extended policy expiration date of May 27, 2012. It would not be unreasonable to conclude that the policy was extended by Westport

---

tution of insurance upon renewal which results in substantially equivalent coverage shall not be considered a cancellation of or a refusal to renew a policy[.]" Neb.Rev.Stat. § 44–522(5)(a).

**58.** The contract also included an automatic extended reporting period. *See* Ex. A14 to Noyes Decl. at WIC00077 ("If we choose to cancel or not renew this 'policy,' and subject to payment of all outstanding premiums or deductibles due, this 'policy' will apply to 'claims' first made against you and reported to us in writing during the sixty (60) days immediately following the date of cancellation or expiration.").

**59.** It appears the policy should have been renewed for one year on February 16, 2012, because no notice of non-renewal was sent to

Agency One before that date. In fact, it appears the insurance was not extended until after the policy term had already expired at 12:01 a.m. on February 16, 2012. At 11:46 a.m. on that date, Lacinski sent an email to Kaiser stating that she "want[ed] to extend this policy for 60 days in order to be able to accurately underwrite it and receive all the info we need...." Ex. A25 to Noyes Decl. at IIAN0319. On February 23, 2012, Kaiser advised Siroky in an email that "I have a 60 day extension for you." Ex. 3 to Miller Decl. At IIAN0257. Kaiser emailed the endorsement to Siroky later that same day and requested payment of an additional premium of $1,336. *Id.* at IIAN0256–IIAN0257. The endorsement amended the policy period to a term of 14 months, from February 16, 2011, to April 16, 2012. Ex. A14 to Noyes Decl. at WIC00122.

in order to satisfy the 60–day notice requirement rather than to "protect its insured."

■ Westport argues that it "had the valid right to rescind the Policy when it first learned in March 2012 that Siroky had misrepresented the licensing status of Agency One personnel in its February 2011 application," and that "relinquishment of this valuable right constitutes additional consideration for the modification of the Policy and further supports the conclusion that the exclusion was properly added to the policy and is enforceable." Westport's reply brief, p. 26.[60] However, "[i]n order for a detriment to the promisee to constitute a valid consideration for a note or contract, it must have been within the express or implied contemplation of the parties and known to and agreed to by them." *Schrempp v. Gallup,* 210 Neb. 415, 315 N.W.2d 248, 250 (1982). There is no evidence that Westport withheld cancellation of the policy in exchange for the exclusion of coverage for Inlay's wrongful acts.

Also, Westport did not have the right to rescind the policy immediately. Under Nebraska law, Westport was required to provide Agency One at least 60 days notice of cancellation. *See* Neb.Rev.Stat. § 44–522(2); *see also* Ex. A14 to Noyes Decl. at WIC00081 ("Such cancellation may be made by mailing to your last known mailing address to you written notice stating when not less than 60 days thereafter such cancellation shall be effective."). Because the policy's first extended expiration date of April 16, 2012, was less than 60 days after Westport first learned of the alleged misrepresentation, cancellation of the policy was not a good option.

As provided by Nebraska law, *see* Neb. Rev.Stat. § 44–522(3), the insurance could only "be cancelled by [Westport] prior to the expiration of the policy term for one of [five] specified reasons," such as a finding that "[t]he policy was obtained through a material misrepresentation[.]" A14 to Noyes Decl. at WIC00081. By contrast, non-renewal of the policy did not require such a finding. Since non-renewal and cancellation both required 60 days' advance notice, Westport's decision to non-renew the policy rather than to cancel it seems the obvious choice.

■ Further, as Westport states, "in order to rescind a policy, an insurer must show that ... the insured's misrepresentations were made knowingly with intent to deceive." (Westport's reply brief, p. 25, citing *White v. Medico Life Ins. Co.,* 212 Neb. 901, 327 N.W.2d 606, 609 (1982)). Westport has admitted that the incorrect answer to Question 24 on the application was given "inadvertently." *See* paragraph 30 of Plaintiff's Statement of Material Facts.

In summary, it is possible that the Specified Individual Entity Exclusion "was a unilateral modification of the Policy unsupported by consideration or mutual assent." Plaintiff's brief, p. 25. Only Westport appears to have derived any benefit from the two extensions of the policy, and it is not clear that Agency One agreed to the exclusion, or agreed that it would go into effect before the second extension.

### 4. Scope of the Exclusion

■ The interpretation of an insurance policy presents a question of law, *Federat-*

---

**60.** Actually, Westport first learned of the alleged misrepresentation on or about February 23, 2012, one week after the policy had been extended for 60 days "in order to give underwriting additional time to review." *See* paragraphs 62–64 of Defendant's Statement of Material Facts; Ex. 3 to Miller Decl. at IIAN0256. In March 2012, Siroky confirmed that she had learned about Inlay losing his Iowa license in November 2010. *See* paragraph 65 of Defendant's Statement of Material Facts.

*ed Service Ins. Co. v. Alliance Const., LLC,* 282 Neb. 638, 805 N.W.2d 468, 474 (2011), and the principles for interpreting insurance policies are well-known:

> An insurance policy is a contract. We construe insurance contracts like any other contract, according to the meaning of the terms that the parties have used. When an insurance contract's terms are clear, we give them their plain and ordinary meaning as a reasonable person in the insured's position would understand them. But when an insurance contract is ambiguous, we will construe the policy in favor of the insured. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

*American Family Mutual Insurance Company v. Wheeler,* 287 Neb. 250, 842 N.W.2d 100, 104 (2014) (footnotes omitted).

 The insurance policy provides that Westport "will pay on behalf of the insured 'loss'[61] for which the insured is legally liable caused by a 'wrongful act'[62]

committed by an insured arising out of 'professional services'[63] rendered to others." Ex. A14 to Noyes Decl. at WIC00066. "The word 'insured' means any person or organization qualifying as such in each 'coverage unit.'"[64] With respect to the Insurance Industry Professional Liability Coverage Unit, "insureds" include Agency One (the "named insured"), its "officers, directors, and former officers and directors," its "employees and former employees but only for acts within the scope of their employment by [the named insured] and while performing duties related to the conduct of [the named insured's] insurance operations," and "[a]ny independent contractor while acting within the scope of their duties as [the named insured's] subproducer." *Id.* at WIC00068. However, the Specified Individual Entity Exclusion, which Westport relies upon in defense of Plaintiff's action,[65] states:

> This INSURANCE INDUSTRY PROFESSIONALS "coverage unit(s)" does not apply to any "claim" or "loss" arising out of any "wrongful act" in the per-

---

**61.** "'Loss' means amounts payable by an insured in settlement of 'claims' or in satisfaction of judgments or awards ..., if covered by the Insuring Agreement." Ex. A14 to Noyes Decl. at WIC00070.

"Claim" or "claims" means:
1. that an insured has received a summons, a subpoena, or any other notice of legal process;
2. that an insured has received notice of any "suit";
3. that an insured has received notice of a written demand, or a written demand for money or services; or
4. that an insured has received a request to provide a recorded statement.
*Id.* at WIC00059.

**62.** "'Wrongful act' or 'wrongful acts' means any negligent act, error, omission, or 'personal injury' of an insured or any person for whose acts the insured is legally liable in rendering services for others." Ex. A14 to Noyes Decl. at WIC00070. "'Personal injury'

means libel, slander, or invasion of privacy committed by the insured. *Id.*

**63.** "'Professional Services' means activities as a managing general insurance agent, general insurance agent, insurance agent, or insurance broker." Ex. A14 to Noyes Decl. at WIC00070.

**64.** "'Coverage unit' means the terms, conditions, definitions, and exclusions as stated in each attachment [to the Policy] for each of the coverages selected by the insureds and listed in the Declarations including endorsements thereto. Each 'coverage unit' is a separate and distinct coverage." Ex. A14 to Noyes Decl. at WIC00060.

**65.** Under Nebraska law, if the insurer invokes an exclusionary clause in a policy, then it bears the burden to prove that the exclusion applies. *Behrens v. Arch Ins. Co.,* 631 F.3d 895, 899 (8th Cir.2011) (citing *Peterson v. Ohio Cas. Grp.,* 272 Neb. 700, 724 N.W.2d 765, 773 (2006)).

formance of business services by DOUG INLAY or any vicarious liability or apparent authority for liability for any "wrongful act" in the performance of business services by DOUG INLAY.

*Id.* at WIC000123.

 Plaintiff does not dispute that the exclusion, if effective, eliminates coverage for any vicarious liability on the part of Agency One and Siroky for any wrongful act committed by Inlay.[66] Plaintiff argues, however, that coverage still exists with respect to allegations in the Iowa lawsuit that "Siroky and Agency One were each negligent in their failure to adequately train, monitor and supervise their employees and producers in the investigation, application, binding and issuing of a Met P & C policy," Ex. A2 to Noyes Decl. at 5, and were negligent and breached their fiduciary duties owed to Met P & C "by failing to properly investigate, apply for, bind and issue the insurance policy for the Potter property," *id.* at 5–8. In other words, Plaintiff denies that the exclusion applies to claims made directly against Agency One and Siroky.

Westport argues that Met P & G's claim against Agency One or Siroky for negligent supervision, monitoring, or training arose out of Inlay's wrongful act and is excluded from coverage. In making this argument, Westport relies upon a line of decisions in which the Nebraska Supreme Court has "interpreted the term 'arising out of' in liability policies as very broad and comprehensive; ordinarily understood to mean originating from, growing out of, or flowing from; and requiring only a 'but for' causal connection between the occurrence and the conduct or activity specified in the policy." *Federated Service Ins. Co. v. Alliance Const., LLC*, 282 Neb. 638, 805 N.W.2d 468, 478 (2011). For example, in *Safeco Ins. Co. of America v. Husker Aviation, Inc.*, 211 Neb. 21, 317 N.W.2d 745 (1982), where a liability policy issued to a pilot training school provided that "[t]his insurance does not apply to ... bodily injury or property damage arising out of the ... operation ... of ... any ... air-

---

**66.** "Coverage under an insurance policy or contract is generally understood to consist of two separate and distinct obligations: the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated to pay because of injury caused to a third party by acts of the insured." *Mortgage Exp., Inc. v. Tudor Ins. Co.*, 278 Neb. 449, 771 N.W.2d 137, 147 (2009). As further explained by the Nebraska Supreme Court:

An insurer's duty to defend is broader than its duty to indemnify. Moreover, an insurer's duty to defend is usually a contractual duty, rather than one imposed by operation of law. The nature of the duty to defend is defined by the insurance policy as a contract.

An insurer's duty to defend an action against the insured must, in the first instance, be measured by the allegations of the petition against the insured. In determining its duty to defend, an insurer must not only look to the petition or complaint

filed against its insured, but must also investigate and ascertain the relevant facts from all available sources. An insurer is obligated to defend if (1) the allegations of the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy.

But if, according to the facts alleged in a pleading and ascertained by an insurer, the insurer has no potential liability to its insured under the insurance agreement, then the insurer may properly refuse to defend its insured. And although an insurer is obligated to defend all suits against the insured, even if groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy.

*Id.* at 147–48 (footnotes omitted).

craft," it was held that the insurer had no duty to defend or indemnify the school against a claim that the death of a student pilot in a plane crash was caused by the school's negligence in training the pilot and in permitting him to fly the aircraft at a time when he was not qualified to do so. The court observed that "[w]hatever else may have been a cause of the decedent's ultimate death, it is clear from the record here that if he had not been operating the aircraft at the time it crashed, he would not have been killed." *Id.* at 748.

If the exclusion in the present case had simply stated that the insurance "does not apply to any 'claim' or 'loss' arising out of any 'wrongful act' in the performance of business services by DOUG INLAY," then, using the *Safeco* analysis, there would be no coverage for Met P & G's claim alleging that Agency One and Siroky were negligent in failing to train, monitor, or supervise Inlay. This is because regardless of any negligence on their part, Met P & J's financial loss would not have occurred "but for" Inlay's alleged wrongful act.

As written, though, the exclusion is ambiguous because it also specifically excludes "any vicarious liability ... for any "wrongful act" in the performance of business services by DOUG INLAY." If the phrase "arising out of" is interpreted to require only a "but for" causal connection between Met P & G's injury and Inlay's wrongful act, then this clause is superfluous because any claim based on vicarious liability would necessarily be excluded by the first clause as "arising out of" Inlay's wrongful act. "In the interpretation of a written contract, when the meaning is doubtful, that construction will be preferred which gives effect to all parts of the instrument, rather than one which renders part of the contract redundant and useless." *McGavock v. Omaha National Bank*, 64 Neb. 440, 90 N.W. 230 (1902) (syllabus by the court); *see also Watts v. Butte School Dist. No. 5*, 939 F.Supp. 1418, 1427 (D.Neb.1996) (applying *McGavock* rule to construe provision in settlement agreement).

By specifically excluding one type of derivative claim (*i.e.*, vicarious liability) but not another (*i.e.*, negligent supervision),[67] Westport created an ambiguity which must be construed against it. *See Safeco*, 317 N.W.2d at 750 ("[A]mbiguities must be construed against the insurer and if a policy is fairly susceptible of two constructions and one affords coverage and the other does not then the construction which affords coverage must be adopted.") Because a reasonable person in the insured's position could understand that the phrase "arising out of" as used in the exclusion requires a direct causal connection between Inlay's wrongful act and a "claim" or "loss," the Specified Individual Entity Exclusion does not apply to Met P & G's allegations that Agency One and Siroky were negligent and breached their fiduciary duties.[68]

---

**67.** "It is axiomatic that for the doctrine of respondeat superior [or vicarious liability] to apply, an employee must be liable for a tort committed in the scope of his employment. Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 508 N.W.2d 907, 913 (1993) (quoting *Strock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235, 1244 (1988)).

**68.** "[O]nce a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit even though other claims in the complaint fall outside of the policy's coverage." *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 537 (8th Cir.1970) (applying Nebraska law).

### B. Plaintiff's Motion to Dismiss

■ Count II of Westport's amended counterclaim seeks the entry of a declaratory judgment to the effect that a consent judgment entered in the Iowa action filed by Met P & G against Agency One and Siroky is unenforceable against Westport because of collusion. Plaintiff has moved to dismiss such count because it does not "state with particularity the circumstances constituting fraud," as required by Federal Rule of Civil Procedure 9(b). The motion to dismiss will be denied because under Nebraska law a party defending against an allegedly collusive consent judgment is not required to plead the elements for a cause of action in fraud and deceit. *See Carlson v. Zellaha,* 240 Neb. 432, 482 N.W.2d 281, 283 (1992).

### II. CONCLUSION

Westport is not entitled to summary judgment because the Specified Individual Entity Exclusion does not apply to Met P & G's claims that Agency One and Siroky were negligent and breached their fiduciary duties, and because there are genuine issues of material fact as to whether the exclusion was effective when Met P & G made its claims against Agency One and Siroky. Plaintiff's motion to dismiss Count II of Westport's amended counterclaim will be denied because Westport has sufficiently alleged that a consent judgment Met P & G obtained against Agency One and Siroky was the product of collusion. Accordingly,

IT IS ORDERED:

1. Defendant's motion for summary judgment (filing 90) is denied.

2. Plaintiff's motion to dismiss (filing 109) is denied.